## John C. Nichols *vs.* City of Boston.

Exclusive possession and use by the proprietor of a wharf extending into tide water, for the
purpose of approaching the wharf with vessels and loading and unloading them there, of
an adjoining dock below low water mark, for more than twenty years after the Rev. Sts.
c. 119, § 12, is sufficient to establish his title thereto by prescription against the Com-
monwealth.

A ferry company, the wooden piles forming one side of whose dock were bent over the dock
of an adjoining proprietor so as to be a nuisance to him, conveyed by deed of warranty
their land and buildings and the rights, easements, privileges and appurtenances thereto
belonging, and by a contemporaneous agreement with the grantee bound themselves to
maintain and run the ferry during a certain term of years in such manner and on such
conditions as he should from time to time prescribe, having the use of the property and
estate conveyed, so far as it might be needed for the purpose, without any charge or pay-
ment therefor. *Held*, that the grantee, by accepting and claiming under the deed, was
liable for the continuance of the nuisance after due notice to remove it.

Knowledge by the grantee of land of a judgment against his grantor for a nuisance existing
thereon the year previous to the conveyance has no tendency to show that he knew that
the nuisance continued to exist when he acquired his title.

Notice of a nuisance existing on property of a city, and request to remove it, if given to
the city clerk only, is insufficient to bind the city; but is sufficient, if given to the mayor.

Tort for obstructing the plaintiff's dock and depriving him
of the use of his wharf. Writ dated December 20, 1865.

The case was submitted to the full court upon a report of *Foster*, J., before whom the trial was had, and a supplemental statement of facts agreed by the parties, the substance of all which appears in the opinion.

It was agreed that, if the plaintiff was entitled to recover, judgment should be entered for him, with damages at the rate of one hundred and fifty dollars per month for such time as the defendant was liable ; otherwise, judgment for the defendant.

*A. A. Ranney & G. W. Park*, for the plaintiff.

*C. H. Hill*, for the defendant.

GRAY, J. The plaintiff is the lessee of a wharf in Boston, known as Lincoln's Wharf, and of a dock or berth for vessels by the side thereof, which lies below the original line of low water mark ; and the first question in the case is whether he has proved such a title to this dock as to entitle him to maintain an action for obstructing the access of vessels to it.

It appears by the plan and evidence introduced at the trial and the facts agreed by the parties, that the dock is about one hundred and thirty feet long by thirty feet wide, open only at the easterly end towards the channel, bounded on the southerly side and the westerly end by the wharf, and on the northerly side since 1853 by a row of piles constituting the slip of the ferry of the People's Ferry Company, and before that time by a narrow platform built before 1830 on piles standing on the same line and used by the superintendent of the Boston Marine Railway Company to walk out and stand upon while giving directions about bringing vessels into the premises of that company to the northwards, on which they had erected a railway for the repair of ships and vessels under the authority given by the St. of 1825, *c.* 68 ; that the plaintiff's dock has been used by him and his lessors for more than forty years for the purpose of approaching the wharf with vessels, and loading and unloading them there, and has not been and could not be used for any other purpose ; and there is no evidence that any other person has ever used the dock or had occasion to use it. These facts show an exclusive possession and use by the plaintiff and those under whom he claims, and would be sufficient to pro e a

title by disseisin as against a private proprietor. *Rust* v. *Boston Mill Corporation*, 6 Pick. 162, 171. *Wheeler* v. *Stone*, 1 Cush 315, 322.

The fact that the soil of this dock was covered by the sea even at low water, and therefore once the property of the Commonwealth, does not defeat the plaintiff's right to maintain this action. By the common law of England, the king owned all lands covered by tide water, and all ports, harbors and arms of the sea, within the realm; holding both the *jus privatum*, or private property in the soil, which he might grant to a subject; and the *jus publicum*, or prerogative right for the common use and benefit of all his subjects for the purposes of navigation and commerce, which could not be granted away to the injury of the common right of navigation, without an act of parliament; but it might be determined on a writ of *ad quod damnum* that such a grant would cause no injury to any public right. *Commonwealth* v. *Alger*, 7 Cush. 82, 83, 90–94, and authorities cited. *Gann* v. *Free Fishers of Whitstable*, 11 H. L. Cas. 192. A royal grant therefore would not of itself protect from indictment as a nuisance a wharf which encroached upon and impaired the common right of navigation. But, as Lord Hale observes in his treatise *De Portibus Maris,* "Nuisance or not nuisance is a question of fact. It is not therefore every building below the high water mark, nor every building below the low water mark, is *ipso facto* in law a nuisance. For that would destroy all the keys that are in all the ports of England. For they are all built below the high water mark; for otherwise vessels could not come at them to unlade; and some are built below the low water mark. And it would be impossible for the king to license the building of a new wharf or key, whereof there are a thousand instances, if *ipso facto* it were a common nuisance because it straitens the port, for the king cannot license a common nuisance." Hargrave's Law Tracts, 85. And even by the law of England, by which no time ran against the king, a sufficient grant of the sea shore, above or below low water mark, to the exclusion of the public right of navigation, might be presumed from long, continuous and exclusive occupation. *Chad* v. *Tilsed*, 5 Moore, 185, and 2 Broa. & Bing. 403. *The King* v. *Mon-*

*tague*, 4 B. & C. 598, and 6 D. & R. 616. 3 Kent Com. (6th. ed.) 427. Angell on Tide Waters, *c.* 9. Met. Con. 296. The claim founded on royal grant and immemorial usage, which was disallowed by the house of lords, reversing the judgments of the common bench and exchequer chamber, in *Gann* v. *Free Fishers of Whitstable*, 11 H. L. Cas. 192, was of a toll or anchor-age on every vessel anchoring in a certain arm of the sea below low water mark, which was a necessary part of the right of nav-igation.

The Commonwealth of Massachusetts has all the title and rights, public and private, both of the king and the parliament of England, in every part of the sea shore of the Commonwealth, which has not vested in individuals or corporations under the colonial ordinance of 1647 or other act of the government; and the legislature may grant the title in the soil, or the right to build wharves thereon, below as well as above low water mark. *Gilman* v. *Philadelphia*, 3 Wallace, 726. *Fitchburg Railroad Co.* v. *Boston & Maine Railroad*, 3 Cush. 87, 88. *Commonwealth* v. *Alger*, 7 Cush. 53. *Commonwealth* v. *Roxbury*, 9 Gray, 451. *Attorney General* v. *Boston Wharf Co.* 12 Gray, 553. *Winni-simmet Co.* v. *Wyman*, 11 Allen, 432. By the Revised Stat-utes of 1836, the time of limitation of real actions by the Com-monwealth was made the same as of those by individuals, and twenty years' exclusive possession barred the right of the Com-monwealth to maintain an action for the recovery of flats. Rev. Sts. *c.* 119, § 12. *Piper* v. *Richardson*, 9 Met. 157, 158. Gen Sts. *c.* 154, § 12. The same period of time which is fixed by the statutes of limitation gives a title by prescription or adverse pos-session, and warrants the presumption of a grant which is not produced. *Edson* v. *Munsell*, 10 Allen, 557.

The St. of 1837, *c.* 229, establishing lines in Boston Harbor beyond which no wharves or piers should be extended into the tide water of the Commonwealth, and prohibiting the exten-sion without leave of the legislature of any wharf or pier, already erected within such lines, further towards them than it already was or might lawfully have been, contains no express grant of a right to maintain any wharf beyond low water mark· but has no tendency to rebut any presumption of a title by pre-

scription or grant, which might by the general principles of law arise from continuous and exclusive occupation.

The plaintiff had therefore acquired a title to this dock, even as against the Commonwealth, before the passage of the St. of 1867, *c.* 275, providing that the statute of limitations should not apply to any right of the Commonwealth below high water mark; and may maintain an action against any trespasser thereon.

The obstruction complained of was occasioned by the ferry boats pressing against the line of piles on the northerly side of the plaintiff's dock, and crowding the piles over towards his wharf, so as to remain in that position and obstruct the entrance of the dock. On the 4th of March 1859, while the piles stood thus, the People's Ferry Company (who were authorized by their charter to convey to the city of Boston) made a warranty deed to the city of their land and buildings, and the rights, easements, privileges and appurtenances thereto belonging; and by a contemporaneous agreement with the city bound themselves to maintain and run the ferry for ten years " in such manner, and at such rates of toll, and upon such terms and conditions, as the board of aldermen of the said city of Boston, with the approval of the mayor thereof, shall from time to time prescribe; the People's Ferry Company having the use of the property and estate conveyed" as aforesaid, " so far as it may be needed for the purpose, without any charge or payment of rent."

By accepting the deed, and claiming under it, the city held and asserted a title to the premises conveyed; and the additional agreement did not make the ferry company tenants thereof, or give them any estate in or occupation of the same, except as the agents of the city and subject to its control. *Kirby* v. *Boylston Market,* 14 Gray, 249. The city therefore stood in the position of a party who acquires title to land on which a nuisance exists, and who becomes liable to other persons injured by its continuance, if he suffers it to continue after notice of its existence and a request to remove it. *McDonough* v. *Gilman,* 3 Allen, 264.

The judgment obtained by the plaintiff against the ferry company for a like nuisance existing in 1858, although actually known to the city when it acquired its title the next year,

had no tendency to show knowledge in the city that the nuisance continued to exist. The notice given to the city clerk, immediately after that conveyance, was also insufficient to affect the city, because the clerk is but a recording officer, unauthorized to receive or to act upon any such notice. But the mayor is by the city charter the chief executive officer of the corporation, whose duty it is to be vigilant and active at all times in causing the laws for the government of the city to be duly executed, to inspect the conduct of all subordinate officers and cause all negligence and violation of duty to be punished, and who has the power to summon meetings of the board of aldermen and of the common council at any time. St. 1854, *c.* 448, § 46. The notice to the mayor, on the 1st of January 1864, of the existence of the obstruction, and request to remove it, was therefore sufficient to bind the city, and to make the city liable for its continuance from that time until it was removed in July 1865. *Judgment for the plaintiff accordingly.*