### JENNIE A. CODY *vs.* CITY OF NORTH ADAMS.

Berkshire.    September 18, 1928. — November 26, 1928.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Damages,* From fall of shade tree in public way. *Municipal Corporations,* Public shade tree. *Tree. Words,* "Retention."

The remedy given by G. L. c. 87, § 3, to a person who suffers injury "in his property by the action of the officers in charge of the public shade trees as to the . . . retention of any such tree," is not given for mere neglect to remove a tree which stood in the public highway and which fell upon the house of an adjoining owner, when there has been no public hearing.

Where there has been no public hearing in the matter, the retention of a decayed public shade tree in a highway by the officer of a city in charge, whether such retention is or is not negligent, gives no remedy under G. L. c. 87, § 3, to the owner of a house damaged by the fall of the tree upon it.

PETITION, filed in the Superior Court on December 29, 1925, under G. L. c. 87, § 3, for assessment by a jury of damages alleged to have been sustained by the petitioner by reason of conduct of the officer of the respondent in charge of the public shade trees "in the retention" of a decayed tree which fell upon the petitioner's house "and in failing to properly care for and control said tree, and in preventing it from falling upon, and damaging her said property, and in relation to its removal."

The parties waived trial by jury and submitted the case upon a "case stated" to *Callahan,* J., "reserving the determination of damages to be assessed by an auditor to be

appointed for this purpose." Material facts are stated in the opinion. The judge found that the petitioner was entitled to recover damages and referred the question of damages to an auditor, who assessed damages in the sum of $1,500. Previous to the reference to the auditor, the respondent appealed from the decision of the judge on the case stated.

The case was submitted on briefs.

Material portions of G. L. c. 87, §§ 1, 3–5, are as follows:

"Section 1. All trees within a public way or on the boundaries thereof shall be public shade trees; . . ."

"Section 3. Except as provided by section five, public shade trees shall not be cut, trimmed or removed, in whole or in part, by any person other than the tree warden or his deputy, even if he be the owner of the fee in the land on which such tree is situated, except upon a permit in writing from said tree warden, nor shall they be cut down or removed by the tree warden or his deputy or other person without a public hearing at a suitable time and place, after notice thereof posted in two or more public places in the town and upon the tree at least seven days before such hearing, and after authority granted by the tree warden therefor. Any person injured in his property by the action of the officers in charge of the public shade trees as to the trimming, cutting, removal or retention of any such tree, or as to the amount awarded to him for the same, may recover the damages, if any, which he has sustained, from the town under chapter seventy-nine.

"Section 4. Tree wardens shall not cut down or remove or grant a permit for the cutting down or removal of a public shade tree if, at or before a public hearing as provided in the preceding section, objection in writing is made by one or more persons, unless such cutting or removal or permit to cut or remove is approved by the selectmen or by the mayor.

"Section 5. Tree wardens and their deputies, but no other person, may, without a hearing, trim, cut down or remove trees, less than one and one half inches in diameter one foot from the ground, and bushes, standing in public

ways; and, if ordered by the mayor, selectmen, road commissioners or highway surveyor, shall trim or cut down trees and bushes, if the same shall be deemed to obstruct, endanger, hinder or incommode persons traveling thereon. Nothing contained in this chapter shall prevent the trimming, cutting or removal of any tree which endangers persons traveling on a highway, or the removal of any tree, if so ordered by the proper officers, for the purpose of widening the highway, and nothing herein contained shall interfere with gypsy and brown tail moth suppression, as carried on under the direction of the state forester and the United States department of agriculture, except so much as relates to the cutting and removal of trees, shrubs and growths that are one and one half inches or more in diameter one foot from the ground."

*P. J. Ashe,* City Solicitor, for the respondent.

*C. T. Phelps & W. F. Barrington,* for the petitioner.

CARROLL, J. "On June 16, 1925, and for many years prior thereto a large elm tree, a public shade tree, stood at a point in the southerly part of . . . [Quincy Street, a public highway in North Adams] within the limits of the said highway and land of the" petitioner, "partly within the area of the sidewalk of said street and partly within the area used for vehicular travel." The tree was "approximately sixty feet in height and about eleven feet in circumference at its base." It was decayed in the trunk near its base and some of the roots had been severed for purposes of sidewalk construction. On June 16, 1925, the tree because of its decayed condition fell on the petitioner's house, causing the damages sought to be recovered in this action.

The powers and duties imposed on tree wardens by G. L. c. 87 are exercised and performed in North Adams by the commissioner of public works, "who is charged with the care of shade trees within the limits of the highways of said city." It was agreed that in December, 1925, the petitioner duly petitioned the commissioner of public works for an assessment of damages; the petition was denied, whereupon the petitioner "brought her petition . . . for the assessment and recovery of the damages sustained."

Under G. L. c. 87, § 5, tree wardens may, without a hearing, cut down trees "less than one and one half inches in diameter one foot from the ground, . . . standing in public ways," and, when so ordered, may cut down trees which endanger public travel. By § 3 of this chapter it is provided that except as provided in § 5, public shade trees shall not be cut, trimmed or removed in whole or in part by any person other than the tree warden or his deputy; and the owner of the fee in the land on which the public shade tree is situated is prohibited from removing or cutting down the tree except upon a permit from the tree warden. It is further provided in this section, G. L. c. 87, § 3, that such a tree shall not be cut down or removed by the tree warden without a public hearing held after due notice is given; and that a person who suffers injury "in his property by the action of the officers in charge of the public shade trees as to the . . . retention of any such tree . . . may recover the damages . . . sustained," under G. L. c. 79, the eminent domain statute. This petition is brought under this statute.

No question arises in this case as to the duty of the tree warden to remove a tree that stands in a public highway and is dangerous to public travel, nor is there any question as to the liability of a city or town to a traveller on the public highway who is injured by a defect in the way caused by a public shade tree. The sole question in the case stated by the parties is the liability of the city of North Adams for the injury caused to the petitioner's house by the fall of the tree.

Under the statute, G. L. c. 87, § 3, the tree could not be removed by the commissioner of public works until after a public hearing at which the parties interested might have an opportunity to be heard. As there was no such hearing, the remedy given to the party injured in her property does not apply. That remedy is purely statutory; it is not given for mere neglect to remove a tree standing in the public highway and which falls upon the house of an adjoining owner, when there has been no public hearing. The failure of the commissioner to remove the tree did not give the petitioner a right to damages under the eminent domain statute. See *Chase* v. *Lowell*, 149 Mass. 85.

The petitioner contends that the natural meaning of the word "retention" as used in the statute is to give a right to damages to one injured in property by the mere fact that such officers permit a shade tree causing damage to remain in the highway. The word "retaining" appears in St. 1867, c. 242, § 1. That section recognized the private ownership of all shade trees to be in the abutting owner, but forbade him to cut down such trees without first giving notice to public officers who might "retain" such tree as a shade tree; and in that event the owner could recover damages according to the highway law. The retention of the tree in those circumstances was an act of eminent domain. In subsequent statutes the word "retention" is used, and the continuation of the word, particularly in St. 1915, c. 145, §§ 3, 8, and G. L. c. 87, §§ 3, 8, indicates that it is to continue to have the same meaning as "retaining," when that word originally appeared in our statutes, *Main* v. *County of Plymouth*, 223 Mass. 66, 69; and as in the case at bar the requirements of the section were not complied with the petitioner cannot recover.

The petitioner contends that, under the statute, the commissioner was negligent in failing to remove the tree. We do not agree with this contention. The decay was in the trunk of the tree, near its base, and there was nothing to show that this decay was visible. Even if the contention of the petitioner in this respect were true, she could not maintain her petition. A public hearing was necessary, and as this provision of the statute was not complied with, the question of the negligence of the officer was not material. See in this connection *Dupuis* v. *Fall River*, 223 Mass. 73, 75.

*Judgment to be entered for the respondent.*