## HARRY S. KURTIGIAN vs. CITY OF WORCESTER
## (and a companion case[1]).

Worcester.   November 4, 1964. — January 4, 1965.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Municipal Corporations,* Liability for tort, Tree, Nuisance, Liability as
landowner, Tax title property. *Tree. Nuisance. Taxation,* Real es-
tate tax: tax title. *Practice, Civil,* Case stated.

A city which for some nine years had held an unforeclosed tax title to
an undeveloped lot of land following a tax taking under G. L. c. 60,
§§ 53, 54, had acquired the right to possession and control of the lot
for the purposes of determining the city's liability for injuries result-
ing from a private nuisance on the lot.   [286–287]
That a city controlled a lot of land in its governmental rather than its
proprietary capacity would not preclude its being held liable for in-
juries resulting from a private nuisance on the lot.   [287–288]
In an action at law heard on the report of an auditor whose findings were
final, it was the duty of the trial judge and of this court to enter the
correct judgment required on the auditor's subsidiary findings and the
proper inferences therefrom, irrespective of the inferences drawn by
the auditor.   [289]
Where it appeared that after a city had acquired control of an undevel-
oped lot of land under a tax title a large tree located on the lot became
diseased, lost most of its bark, died, and was obviously decayed, that
subsequently one of its main limbs blew down in a windstorm, that a
representative of the city then examined the tree, and that more than a
year later another main limb blew down in a windstorm and struck and
seriously injured the owner of an adjacent lot walking on his lot near
the tree, the city was liable to the injured person on the ground that the
tree was a private nuisance.   [290–291]

Two ACTIONS OF TORT.   Writs in the Superior Court dated
September 22, 1960, and April 10, 1961, respectively.

---

[1] The companion case is by the same plaintiff against Claus H. Norling and
others.

The actions were heard by *Meagher, J.*, on an auditor's report.

*Andrew F. McCarthy*, Assistant City Solicitor (*Harry J. Meleski*, City Solicitor, with him), for the City of Worcester.

*Walter J. Griffin* for the plaintiff.

*Richard W. Mirick* (*Dennis E. Jordan* with him) for Claus H. Norling & others.

WILKINS, C.J. The plaintiff, on October 18, 1959, while working in his yard, was hurt when struck by a limb blown from a decayed tree on adjoining premises. Each action is in tort and based upon negligence and the maintenance of a nuisance. The cases were referred to an auditor whose findings of fact were to be final. In the action against the city he found that the city was negligent but that the tree did not constitute a nuisance. In the Norling case he found for the defendants. The judge ordered judgments accordingly on the auditor's report. The city appealed. The plaintiff appealed in the Norling case, but waives that appeal in the event that the order for judgment against the city is upheld.

Liability for damage caused by the defective condition of premises turns upon whether a defendant was in control, either through ownership or otherwise. This is the elementary rule (*Frizzell* v. *Metropolitan Coal Co.* 298 Mass. 189, 191, and cases cited) and is assumed by all the parties in the cases at bar. The auditor made no clean-cut finding that any defendant exercised actual control of the real estate where the tree was.

The city first contends that it did not have title to and control of the real estate. Title to the lot, which, although in a residential area, was itself undeveloped and wooded, was acquired by deed in 1942 by the late Beatrice R. Norling, whose administrator and heirs at law are the defendants in the Norling case. She died on August 10, 1951. Previously on September 29, 1950, the city recorded in the registry of deeds an instrument of taking made on August

11, 1950, pursuant to G. L. c. 60, §§ 53, 54,[1] for nonpayment of taxes assessed in 1949. On May 28, 1953, a notice of foreclosure was recorded stating that on May 25, 1953, the city had filed a petition in the Land Court against Beatrice R. Norling seeking to foreclose the tax title acquired by the instrument of taking made on August 11, 1950. See G. L. c. 60, § 65 (as amended through St. 1938, c. 305).[2] On September 16, 1960, a "Notice of Disposal in Tax Lien Case" dated August 25, 1960, and "executed by the Land Court," was recorded in the registry of deeds. This stated that there had been entered in the Land Court a decree foreclosing and barring rights of redemption to the Norling lot. See G. L. (Ter. Ed.) c. 60, § 74. At all material times the city had a tax title property department and a tax title property custodian[3] in accordance with G. L. c. 60, and, to the extent permitted by that chapter, engaged in the operation, maintenance, control, and sale of tax title property.[4] On December 19, 1960, the Norling lot was transferred to the jurisdiction of the school department by order of the city council.

1. The city argues that the taking pursuant to § 53 vested title subject to the right of redemption, and under § 54 its title was held only as security until redemption or until the right of redemption was foreclosed; in other

---

[1] Section 53 (as amended through St. 1933, c. 164, § 3) provides in part: "If a tax on land is not paid within fourteen days after demand therefor and remains unpaid at the date of taking, the collector may take such land for the town [city]." Nothing is said as to when the municipality is to have the right of possession. Cf. G. L. c. 60, § 45, relating to a purchaser who receives a collector's deed at a tax sale, infra, p. 287.

Section 54 (as amended through St. 1938, c. 339, § 2) prescribes the form of the instrument and for its recording within sixty days of the date of taking, and further provides in part: "Title to the land so taken shall thereupon vest in the town [city], subject to the right of redemption. Such title shall, until redemption or until the right of redemption is foreclosed as hereinafter provided, be held as security for the repayment of said taxes."

[2] Section 65 provides in part: "After two years from a sale or taking of land for taxes . . . whoever then holds the title thereby acquired may bring a petition in the land court for the foreclosure of all rights of redemption thereunder."

[3] See G. L. c. 60, § 77B, inserted by St. 1947, c. 224, § 1.

[4] See G. L. c. 60, § 52, as amended through St. 1936, c. 392, § 1.

words, that it did not have absolute title, would have been able to keep only the amount of its lien in the event of a taking by eminent domain, and before the right of redemption was foreclosed could not have collected any rents.

The plaintiff, on the other hand, argues that there is a distinction in § 54 from the statutory provisions respecting a tax sale. Under G. L. c. 60, § 45 (as amended through St. 1938, c. 339, § 1), a collector's deed conveys the land to the purchaser[1] subject to the right of redemption, and until there is redemption or the right of redemption is foreclosed, the title thus conveyed is held as security. The section also provides: "No sale . . . shall give to the purchaser any right to possession of the land until the expiration of two years after the date of the sale." Without the last quoted sentence, added by St. 1918, c. 257, § 49, possession would follow the tax title. See *Perry* v. *Lancy,* 179 Mass. 183, 186. Nichols, Taxation in Massachusetts (3d ed.) pp. 398, 405. The plaintiff's contention is that the omission of such a sentence in § 54 shows a legislative purpose that the city by taking a tax title would acquire the right to possession at once.

The Legislature has not shown a clear intention that the time of a municipality's right to possession should vary with the method of acquiring title. We do not decide whether the city's right to possession followed the vesting of title subject to redemption under § 54, namely on September 29, 1950, some nine years before the plaintiff's injury, or whether the two year delay prescribed in §§ 45 and 50 should be applied. In any event the city's right to possession long preceded the date of injury.

2. The next contention of the city is that, at most, title would be held in its governmental capacity rather than in its proprietary capacity (see *Worcester* v. *Commonwealth,* 345 Mass. 99, 100); and that the collection of taxes is a governmental function in the performance of which it is not

---

[1] Where a city is the purchaser, the deed to it confers upon it the rights and duties of an individual purchaser. G. L. c. 60, § 50 (as amended through St. 1941, c. 319, § 1).

liable for the tortious acts of its officers (citing *Bolster* v. *Lawrence,* 225 Mass. 387, 389; *Auger* v. *New Bedford,* 265 Mass. 327; and *Orlando* v. *Brockton,* 295 Mass. 205, 209.) [1] There is no such immunity, however, where there is a nuisance maintained on real estate owned or controlled by a municipality, and this principle obtains "even where the nuisance arises out of the performance by the municipality of a governmental duty in the interests of the general public." *Wershba* v. *Lynn,* 324 Mass. 327, 333. *Miles* v. *Worcester,* 154 Mass. 511, 513. *Gosselin* v. *Northbridge,* 296 Mass. 351, 352. The liability of a municipality as owner of land or of a building for a private nuisance is the same as that of a natural person. *Johnson* v. *Somerville,* 195 Mass. 370, 376. *Jones* v. *Great Barrington,* 273 Mass. 483, 488. *Towner* v. *Melrose,* 305 Mass. 165, 168. See McQuillin, Municipal Corporations (3d rev. ed.) § 53.49.

In this Commonwealth the *Jones* and *Wershba* cases make it clear that trees can be a nuisance as much as can a dilapidated building or other structure. Compare *Cork* v. *Blossom,* 162 Mass. 330, 332 (tall chimney). An authority to the same effect is *Gibson* v. *Denton,* 4 App. Div. (N. Y.) 198, 200–201. See 3 Cooley on Torts (4th ed.) § 442. For a tree constituting a nuisance to an adjoining landowner, see *Parsons* v. *Luhr,* 205 Cal. 193; *Andrews* v. *Smith,* 324 Pa. 455, 458–459. See also *Kilbourn* v. *Seattle,* 43 Wash. 2d 373, 384–385. As the limb did not overhang the plaintiff's land, we have no occasion to examine the question whether the plaintiff is limited to self-help, as in *Michalson* v. *Nutting,* 275 Mass. 232. Accord *Sterling* v. *Weinstein,* 75 Atl. 2d 144 (D. C. Mun. Ct. App.). But see *Davey* v. *Harrow Corp.,* [1958] 1 Q. B. 60. It has not been argued that we should adopt a distinction between trees naturally on land and those which have been planted, even assuming it is possible to ascertain the origin of this particular tree. Compare *Davey* case (pp. 71–72) and *Sterling* case (p. 147)

---

[1] The principle of municipal immunity has been strongly criticised. Fuller and Casner, Municipal Tort Liability in Operation, 54 Harv. L. Rev. 437. McQuillin, Municipal Corporations (3d rev. ed.) § 53.24a.

with Restatement: Torts, § 840.  See Goodhart, Liability for Things Naturally on the Land, Essays in Jurisprudence and the Common Law, 151; Noel, Nuisances from Land in its Natural Condition, 56 Harv. L. Rev. 772, 786–788; Prosser, Torts (2d ed.) § 75, p. 431.

3.  The auditor has made a restricted finding that the tree was not a nuisance.  It was the duty of the judge, and is now our duty, to enter the correct judgment on the auditor's report.  *Union Old Lowell Natl. Bank* v. *Paine,* 318 Mass. 313, 315.  *Abrams* v. *Reynolds Metals Co.* 340 Mass. 704, 705.  The auditor's exact words are, "The tree . . . did not, on October 18, 1959, constitute a nuisance such as would support a personal injury action by the plaintiff . . . against the owner of the land on which it was situated or against the party or parties in control of said land."  Any implication that a municipality cannot be liable for a personal injury caused by a nuisance maintained on land subject to its ownership and control, we have already rejected.

We summarize the subsidiary findings of the auditor.  In December, 1954, a large elm tree was situated in the southeast corner of a lot which was bounded by that of the plaintiff on the east and by Gosnold Street on the west.  This was the lot which Beatrice R. Norling acquired by deed.  Both lots are bounded on the south by land of the city called the Andover Street school lot.  The tree was about twelve feet distant from both its easterly and southerly boundaries, and was clearly visible from the plaintiff's lot and from the school lot.  It was not readily noticeable from Gosnold Street but could be seen from that street if made the subject of a specific search.  The tree became afflicted with the dutch elm disease.  It was about thirty-five feet tall, and the diameter of its trunk was about twenty inches.  In the spring of 1955 shortly after the plaintiff bought his property, the tree had very little foliage.  In 1956 its leaves did not come out, and before the end of the year it had lost all the bark on its major branches and most of the bark on its trunk.  It was then dead.  In August, 1958, one of its three remaining large branches came down

in a windstorm and fell across a fence on the boundary of the plaintiff's lot. About a week later in response to a telephone call, a representative of the park department of the city went into the yard and looked at the tree.

On October 18, 1959, the wind blew hard, but winds of this strength had been experienced in the neighborhood on many occasions before and after that date. The plaintiff was walking in his yard, when he heard a cracking sound, looked up, and saw a heavy limb falling toward him. He and his three year old nephew were knocked down. The plaintiff was rendered unconscious. His skull was fractured, his left arm broken in two places, and his left wrist fractured. The limb was about ten inches in diameter and at least ten to fifteen feet in length, and joined the trunk not less than twenty feet from the ground. It was one of the two remaining main branches. "There was no evidence that the tree was weak or decayed prior to October, 1959, other than what could reasonably be inferred from the fact that it was dead, that many but not all of the small branches were missing, that all of the bark was missing from its large limbs, that most of the bark on the trunk was loose or had fallen off, and that a heavy limb had blown off in August of 1958 in a windstorm."

On the subsidiary findings and the reasonable inferences therefrom, there was, as early as 1956 when the tree died, a private nuisance as to the plaintiff and his property. While not a public shade tree (see G. L. [Ter. Ed.] c. 87, § 1; *Cody* v. *North Adams,* 265 Mass. 65), it was on land owned by and subject to the control of the city. It was obviously decayed. In 1958 one of the three remaining large limbs had fallen partly on the plaintiff's property, at which time a representative of the city's park department responded to a telephone request and examined the tree. The remaining limbs were likely to fall at any time and obviously might be blown onto the plaintiff's land. They were large enough to cause serious personal injury, as was demonstrated by the one which struck the plaintiff. The city, as we have seen, had been in possession since 1950 or 1952.

In 1952 there was no private nuisance. That came into existence while the city was in control. Hence cases are not in point which require notice to one who becomes the owner of real estate upon which there is already a nuisance created by his predecessor. See *Penruddock's Case,* 3 Co. Rep. Part V, 100, b; *McDonough* v. *Gilman,* 3 Allen, 264, 266; *Nichols* v. *Boston,* 98 Mass. 39, 43; *Leahan* v. *Cochran,* 178 Mass. 566, 569. Cf. 39 Am. Jur., Nuisances, § 39; 66 C. J. S., Nuisances, §§ 83, 84. Nothing in *Maynard* v. *Carey Constr. Co.* 302 Mass. 530, 533, requires another result, since the private nuisance in the case at bar was foreseeable. See Restatement: Torts, § 839 (1) (a), comment (h).

This private nuisance was nonetheless one merely because the city had acquired the lot through foreclosure for nonpayment of taxes. Public policy in a civilized community requires that there be someone to be held responsible for a private nuisance on each piece of real estate, and, particularly in an urban area, that there be no oases of nonliability where a private nuisance may be maintained with impunity.

4. In the action against the city the order for judgment for the plaintiff is affirmed. In the action against the Norlings the plaintiff's appeal is waived.

*So ordered.*