Welsh, J.
This is a civil action sounding in tort for injuries sustained as a result of a fall by the plaintiff Helena Ponte on her own land, allegedly caused by an accumulation of leaves, sap or other debris from a willow tree located on land of the defendants. The plaintiffs husband claims for loss of consortium and consequential damages.
The defendants’ answer is not summarized in the report. We assume, for purposes of this decision, that the answer espoused the position that the defendants were not legally responsible for the injuries sustained.
The court found for the plaintiffs and awarded damages of $15,000.00 to the plaintiff Helena Ponte and $3,000.00 for loss of comfort, care and consortium to Joseph G. Ponte.
There was evidence tending to show the following:
*7 The plaintiffs and defendants own adjoining residential premises in the City of New Bedford. There is a willow tree located on the defendants’ lot. The trunk of the tree is about four feet from the plaintiffs’ driveway. Branches from the willow tree overhang the picket fence which separates the two lots and extend over the plaintiffs’ driveway. Commencing in 1976, the plaintiffs noticed that leaves, sap and branches that fell from the tree were deposited on and about their driveway. The problem became more acute as time progressed. Several months before the accident in question, the plaintiffs and another member of their family complained to the defendants and requested that the tree be removed. Leaves and debris would clog their gutters and the filter of the swimming pool. Sap and other debris would come down upon their motor vehicles. There were also complaints made about the personal hazard that was caused by the tree.
About 10 days before the accident, the plaintiffs’ attorney wrote to the defendants, reiterating the complaint, and mentioned that Mr. Ponte had already fallen on the leaves and debris. The letter portended similar incidents unless the tree were removed. The plaintiff fell on the leaves and sap on September 9,1978, resulting in two fractures of her ankle bone.
The court made a specific finding of fact that the tree was not diseased and that the leaves, sap and debris which were deposited on the plaintiffs’ land were due to the natural charateristics of the weeping willow species.
Counsel agreed that the memorandum of decision adopted by the trial judge comprises all facts necessary to determine the correctness of the judge’s decision.
1. The crucial issue is whether the defendants owed a legal duty to remove the tree under the circumstances. If such a duty existed, then the defendants must be held liable for damages proximately caused by the breach of that duty. Conversely, if no legal duty existed, the harm caused the plaintiffs is damnum absque injuria.
. There is no universally satisfactory definition of what constitutes a private nuisance. Professor Prosser characterizes the law of nuisance as an “impenetrable jungle.” PROSSER, LAW OF TORTS (4th ed. 1971), p. 571. The principal reason for the confusion is the tendency of courts to resort to the word “nuisance” as a talisman for a potpourri of conduct which is not legally privileged and which results in a substantial interference with the rights of another to use and enjoy real property in which he has a legally recognized interest. As Prosser points out, this sort of analysis begs the question, and does not provide any real guide in determining cases with variant factual patterns. Id, p. 571. The actual or threatened invasion of the plaintiffs’ interests must be substantial. Certain annoyances or disturbances, although quite real to the persons adversely affected, have been found not to be actionable. The test is not whether the conduct or activity would be objectionable to a hypersensitive person, but rather would a normal person in the community find the conduct in issue clearly offensive and annoying. Tortorella v. H. Traiser & Co. Inc., 284 Mass. 497, 501 (1933).
The record in the case at hand is silent on the origin of the tree. It may be inferred that the tree had been growing for a substantial number of years from the somewhat cursory description afforded in the report. We take judicial notice that the tree was, at the time in question, a living tree, since only living trees produce sap. There is no specific finding that the tree is, per se, a hazard to life or limb or posed a danger to the plaintiffs’ property. A tree whose roots or branches extend beyond the boundary line have been held not to constitute a nuisance in themselves. Prosser, supra, p. 577, footnote 70.
No cases in this Commonwealth have been brought to our attention by counsel or disclosed by our own research which hold that a living tree which overgrows the boundary of its owner constitutes an actionable private nuisance to the possessor of adjoining property. The RESTATEMENT OF TORTS suggests that where the tree is a part of the natural condition of the land, there is no liability for private nuisance. RESTATEMENT (SECOND) OF TORTS §840, Comment a, compare Illustrations 2 *8 and 4. An artificial condition which is abatable may constitute an actionable nuisance if the owner knows or should know of it and has had a reasonable opportunity to abate it. Id., §839. Without necessarily subscribing to this view, we observe that the proof in such cases would be difficult.
The cases in Massachusetts dealing with the question of trees as a nuisance are comparatively rare. One of the leading cases in this area is Michalson v. Nutting, 275 Mass. 232 (1931). The plaintiffs bill in equity alleged that the roots of a poplar tree growing upon land of the defendant had invaded plaintiffs land and obstructed sewer and drain pipes, causing expense in digging them up and clearing them. It was also alleged that the roots had grown under the plaintiffs cellar, causing the cement to crack and threatening serious injury to the foundation of the plaintiffs building. The Supreme Judicial Court, in affirming the dismissal of the bill by the trial court, held that the natural and reasonable extension of the roots and boughs of trees into adjoining property was damnum absque injuria, Id. p. 233. The court extended the principle enunciated in the earlier case of Bliss v. Ball, 99 Mass. 597 (1868) that injury done by the mere shade of trees on the land of a defendant to his adjoining neighbor was not legally compensable. Id., p. 598. The usual rationale given for this approach is that to allow recovery in such situations would inundate the courts with frivolous and vexatious suits. Michalson, supra, at p. 233. The case says that the plaintiff may remove the encroaching limb himself and thereby sanctions self help remedy.[3]
Against this backdrop, the case of Kurtigian v. Worcester, 348 Mass. 284 (1965) was decided by the Supreme Judicial Court. Although the plaintiffs action involved both the City of Worcester and one Norling, a private adjoining landowner, whose property was subject to tax taking proceedings, the plaintiff waived his appeal of the finding in favor of Norling if the City’s appeal of the finding in favor of the plaintiff was not successful. Since the appeal by the city against the plaintiff was not successful, the court found no occasion to reconsider the doctrine of Michalson v. Nutting, as to private landowners. Kurtigian v. Worcester, supra, at p. 288. The plaintiff was injured when a limb was blown from a decayed tree on adjoining premises. The principal issue in the case was whether the city was insulated from liability by virtue of the doctrine of municipal immunity.[4] The case recognized that a municipality was liable for a private nuisance to the same extent as a private landowner. Id., p. 288. The fundamental question was one of control. The fact that the title by the city of a lot taken for non-payment of taxes was subject to a right to redemption by the taxpayer did not affect the city ’ s possession of the lot. The second major issue was whether the city was liable for nuisance in the circumstance presented. The court recognized that trees may constitute a nuisance in certain circumstances, citing Jones v. Great Barrington, 273 Mass. 483 (1930) and Wershba v. Lynn, 324 Mass. 327 (1949). The court referred to the auditor’s finding that the tree had been diseased from at least 1955 and dead since at least 1956, three years before the injury complained of. Id, p. 289. The court inferred that from at least 1956 when the tree died, it constituted a private nuisance to the plaintiff and his property. The city reasonably should have known of its condition and did, in fact, know.
The defendant contends that Kurtigian v. Worcester suggests that the underpinnings of the Nutting case have eroded to the point that a new theory of liability suggested by Kurtigian would make the defendant legally responsible in a case such as this. We point out that both the Wershba md Jones cases relied upon in Kurtigian, as well asKurtigian, involved trees that were diseased, decayed or dead. The trial court in the instant case characterized the distinction between a live healthy tree and a dead, diseased or decayed *9 one as ‘ ‘nice but meaningless. ’ ’ We do not agree. The right on the part of the owner or lawful occupant of the land to use and enjoy it for lawful purposes must be weighed against the likelihood of substantial harm to a neighboring landowner in cases of private nuisance. See: Tucker v. Badoian, 376 Mass. 907 (1978), (concurring opinion of Kaplan, J., pp. 916-919). A dead, diseased or decayed tree has little or no utility to its owner and poses a foreseeable threat or harm to adjoining landowners from falling limbs and the like. A live tree provides shade and will generally enhance the amenities of the landowners’ property. The fact that leaves or other debris will naturally fall from live and healthy trees inocuous in themselves and that such emissions might cause some inconvenience or annoyance to persons upon whose land they come to rest does not seem to us to require that such trees be abated or render the owner of the tree liable for damages. See: Bliss v. Ball, 99 Mass. 597, 598 (1868).
2. While, as a general principle of law, the existence of a nuisance is a question of fact dependent upon individual circumstances in each case (See: Mullhollnd v. State Racing Commission, 295 Mass. 286, 291 [1936]), the parties herein have stipulated that all subsidiaiy facts necessary to the decision are contained in the judge’s memorandum of decision. We are therefore in somewhat the same position of a judge with a confirmed master’s report before him for the entry of judgment. Anagnosti v. Almy, 252 Mass. 492, 500, 501 (1925).
It is ORDERED that the findings for the plaintiff be vacated, and that Judgment enter in the trial court dismissing the complaint on the merits.

So ordered.

 Id. p.234. The opinion recognizes that other states have reached opposite results. See p. 234 for collection of authorities.

 The concept of municipal immunity in tort has been largely mooted by the passage of St. 1978, c. 512. See Whitney v. Worcester, 373 Mass. 208, 225, 226. (1977).