Larkin, J.
Plaintiff brought an action in tort, sounding in negligence, seeking to recover for serious injuries as a result of a fall from a canvass-covered wooden ramp leading to a boat dock preparatory to embarking on a fishing trip. The issues in the case are whether the defendant could be found to have exercised ownership or control over the assertedly negligently maintained ramp and, if so, whether the manner in which the ramp was monitored and maintained was negligent under the circumstances relevantly obtaining.
The facts which ground this appeal are not seriously in dispute.
The plaintiff, Joseph Westort, in the company of his wife and two friends, in the early morning hours of September 15,1978, left Hadley, Massachusetts to drive to Quincy, Mass, to participate in á day of deep sea fishing which the *198 party had planned. They had made advance reservations to rent one of defendant’s boats. Arriving at defendant’s boat yard about 6:00 a.m., they went to the rental office and paid the requisite fees for the boat rental and bait. Obtaining a receipt for the payment of the fees, the party left the office of the boat yard and proceeded towards the dock at which they were to obtain their boat. The party of four advanced towards the dock, carrying all their attendant fishing tackle and bait.
Proceeding from the defendant’s office, they crossed a paved area and then started down the subject ramp which, the tide being out, sloped sharply towards the water and the dock where the defendant’s boats were kept. Plaintiffs three companions proceeded him down the ramp without incident. The first to traverse the ramp, one Senecal, reached the boat first. He was met by one of the defendant’s employees who was waiting for the party to designate the craft which they would be renting for the day. Senecal showed his receipt to this employee (again, signifying that the requisite fees had been paid). Thus satisfied, the employee pointed out the party’s boat and Senecal proceeded to bend down to hold the boat in place so that another companion might get in. At this point, he suddenly observed the plaintiff, (again the last in line coming down the plank) “throw up his arms, slip and fall off the edge of the ramp” to the ground which was then about four feet below the edge of the ramp.
The ramp from which the plaintiff fell was about four to five feet wide and consisted of wooden boards running from one edge to the other, spaced from one half inch to one inch apart. There was a' canvas strip in the center which ran the entire length of the ramp. Significantly, despite the fact that the ramp could assume perilously pitched and precipitous angles because of the hydraulic effects of the tides, there were no hand or guardrails in place on the ramp, nor, from all that appears from the record, any warning or cautionary signs directed at those who would be traversing it in order to get to the boats which the defendant was in the business of renting to them. The record shows that the ramp was used not only by people seeking initial access to the boats, but also by fishermen “dragging their catch in bqgs” to a cleaning area. This “cleaning” site, contiguous to the ramp, was located in the paved area through which plaintiffs party had passed after paying their rental fees.
On the day of the accident, the trial judge found that the canvas strip was wet and slippery. Rushing to the plaintiffs side after his fall, Senecal and one Barcomb (another of the companions) noticed that “there were skid marks on the canvas (portion of the ramp) running to where the plaintiff had fallen off the ramp.”
As noted previously, plaintiff sustained serious injuries as a result of the fall. The trial judge’s award of $26,674.97 is abundantlyjustified if the plaintiff can be found to have cleared the two previously cited liability hurdles of defendant’s contested “control” of the ramp and putative negligence in maintaining it. We find that he has cleared these hurdles, however narrowly.
We turn first to the issue of control. Liability for damages caused by the condition of the premises depends upon control of the offending instrumentality either through ownership or otherwise. Leonardo v. Great Atlantic and Pacific Tea Co., 340 Mass. 450 (1960); Kurtigian v. City of Worcester, 348 Mass. 284 (1965); Buck v. Clauson’sInn at Coonamessett, Inc., 349 Mass. 612 (1965).
Defendant argues that the evidence introduced by plaintiff did not establish that it was the owner nor person in control of the ramp. We disagree. Although the facts do not establish defendant as the owner of the subject ramp, the *199 trial court’s conclusion that the ramp was under defendant’s control is supported by adequate evidence.
Defendant’s boats were moored to a dock at the end of this ramp and an employee of defendant’s was stationed there to assist its customers at the landing area. The record clearly supplies the inference that the employee at the dock was also stationed there to protect defendant’s property from non-customers of defendant and this reinforces the suggestion that the defendant was exercising control over the area. We note also that after the fall, it was the defendant’s employees, and not the members of a sizeable crowd which had gathered, who took plaintiff to the defendant’s office. In addition, it strains credulity to rationalize the defendant’s denial of ownership and/or control of the ramp when the very existence of its business depended on the access provided by the ramp in question. At the very least, the evidence raises a presumption that the ramp is owned or controlled by the defendant and the burden is on it to come forward with more than just a general denial — all that was done here. This is especially true in light of the fact that the defendant is in the best position to know who, if not itself, owns or controls the area.
We next address the issue of the nature of the duty owed to the plaintiff and whether this duty has been breached under all the attendant circumstances here.
Under common law, the duty owed plaintiff (and all the other customers of defendant) is that duty owned to an invitee. The rule is usually stated that a possessor owes an invitee a general duty to use reasonable and ordinary care in keeping the property reasonably safe for the benefit of the invitee. This includes the duties owned to licensees (to warn of concealed, dangerous conditions known to the landowner and use ordinary care in active operations on the property) plus a duty to make reasonable inspections to discover dangerous conditions and, thereafter, make them safe.
Massachusetts has abolished these common law rules and the distinctions between licensees and invitees. Mounsey v. Ellard, 363 Mass. 693 (1973). Our courts now apply the ordinary standard of care to all lawful visitors by the owner or occupier of land. D'Allessio v. Ray's Pharmacy, 57 Mass. App. Dec. 150 (1976).
Defendant asks us to approach this case with a familiar negligence analysis to answer questions of reasonableness, notice and foreseeability. Specifically, defendant argues that it should not be liable unless it reasonably should have known of the problematic situation and had a reasonable opportunity to redress it. Young v. Garawacki, 1980 Mass. Adv. Sh. 729, 402 N.E. 2d 1045. We accept that approach.
In our view, it is clear from the facts that the ramp was slippery due to the combination of early-morning “hazy” ocean air and the fact that bags of fish had been dragged up the ramp for cleaning. Indeed the trial judge explicitly so found. Defendant’s argument that it did not cause this condition is irrelevant. The relevant inquiry is whether the defendant knew or should have known that this condition existed. We believe that this question can be answered in the affirmative.
Under the “reasonable man” standard of ordinary care, the defendant should have known of the slippery condition of the ramp. This was certainly not a one time occurrence. A reasonable man would expect and anticipate that early morning air would often be damp and hazy and would saturate the canvas on the ramp causing it to become a “slippery slope” indeed. It could reasonably be anticipated that the dragging of the briny fish bags would *200 exacerbate this condition, as it obviously did here. The evidence showed that defendant was well aware of the fish cleaning entrepreneurs located at the top of the ramp. Again, it strains credulity to believe that defendant was not aware of the water saturated early morning air and its impact on a precipitously pitched canvass covered plank. A reasonable man would well conclude that these factors would produce a slippery ramp, dangerous to the welfare of its customers. In our view, clearly there was some positive duty owed this plaintiff. However, defendant did nothing. It did not warn its customers of the dangerous condition nor did it take reasonable steps to mitigate the danger— such as the placing of guardrails, etc. We find this to be a breach of the duty owed the plaintiff and we further find this breach to be the proximate and legal cause of the plaintiffs injury.
The defendant argues that there is no evidence as to the length of time that the ramp was slippery. In Oliveri v. Massachusetts Bay Transp. Authority, 363 Mass. 165 (1973), the court held that the length of time which a foreign substance maybe present on business premises before a defendant becomes negligent for failing to remove it is governed by the circumstances of each case and to a large extent depends on the opportunity for discovery open to the defendant’s employees by reason of their number, their physical proximity to the condition in question and, in general, the likelihood that they will become aware of the condition in the normal performance of their duties. In the case at bar, an employee of the defendant was stationed at the very base of the ramp in question and had ample opportunity to learn of the danger. We therefore find defendant’s argument unpersuasive.
Accordingly, in view of the principles canvassed above, we conclude that the defendant was negligent in its duty owed to the plaintiff resulting in injury proximately caused by that negligence.
For all of these reasons, we conclude that the action of the trial court in entering judgment for plaintiff in the amount of $26,674.97 did not constitute error and that this action should be affirmed. It is so ordered.