NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12432

MARY SHIEL  vs.  JOHN ROWELL & another.[1]


Norfolk.       March 8, 2018. - July 16, 2018.

Present:  Gants, C.J., Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Nuisance.  Trespass.  Real Property, Nuisance, Trespass.



Civil action commenced in the Quincy Division of the
District Court Department on July 24, 2015.

A motion to dismiss was heard by Mark S. Coven, J.

The Supreme Judicial Court granted an application for
direct appellate review.


William F. Spallina for the plaintiff.
Daniel S. McInnis for the defendants.


CYPHER, J.  At the root of this case lies a distinctively

neighborly type of dispute about who should have the

responsibility for monitoring and cutting back an intruding

---

[1] Keli-Jo Rowell.

tree.  The defendants, Keli-Jo and John Rowell,[2] own the property adjacent to the plaintiff, Mary Shiel.  On the Rowells' property sits a one hundred foot tall sugar oak tree with branches reaching over Shiel's property.  Shiel filed a complaint with claims of private nuisance and trespass against the Rowells after the tree allegedly caused algae buildup on the roof of Shiel's home and the Rowells refused to cut it down.  Shiel sought money damages for the damage to her roof and an injunction demanding that the overhanging branches be cut back.

A District Court judge dismissed Shiel's claims as precluded by Ponte v. DaSilva, 388 Mass. 1008, 1008 (1983) (individual whose property is injured by neighbor's healthy tree has no cause of action against landowner of property upon which tree lies).  The Appellate Division of the District Court affirmed, Shiel appealed, and we granted her application for direct appellate review.  Shiel concedes that Ponte is controlling but asks that we overrule it and related cases.  The Rowells urge us to ground our decision in stare decisis and not to disturb existing law.  We affirm.

Discussion.  1.  Massachusetts rule.  The law in Massachusetts has long been that a landowner may not hold a neighbor liable for damage caused by that neighbor's healthy

---

[2] The plaintiff, Mary Shiel, brings all claims against both defendants, so we refer to the defendants collectively as "the Rowells."

trees.  See Ponte, 388 Mass. at 1008; Michalson v. Nutting, 275 Mass. 232, 232-233 (1931).  See also Kurtigian v. Worcester, 348 Mass. 284, 290 (1965) (rule does not apply to unhealthy trees).  In Michalson, supra at 232-233, roots from the defendants' poplar tree clogged the plaintiffs' sewer and drain pipes and cracked the plaintiffs' cement cellar, risking serious damage to the house's foundation.  We concluded that the defendants could not be held liable for that damage because "an owner of land is at liberty to use his land, and all of it, to grow trees."  Id. at 233, citing Bliss v. Ball, 99 Mass. 597, 598 (1868).  We recognized that the plaintiffs had the right to cut off intruding boughs and roots and reasoned that "it is wiser to leave the individual to protect himself, if harm results to him from this exercise of another's right to use his property in a reasonable way, than to subject that other to the annoyance, and the public to the burden, of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious."  Michalson, supra at 234.

We reaffirmed this rule in Ponte, where the plaintiff sought damages for personal injuries after slipping in her driveway, which was covered by debris from her neighbor's tree. Ponte, 388 Mass. at 1008 ("The failure of a landowner to prevent the blowing or dropping of leaves, branches, and sap from a healthy tree onto a neighbor's property is not unreasonable and

cannot be the basis of a finding of negligence or private nuisance").  Landowners who are disturbed by their neighbor's trees are not without recourse.  A property owner retains "the right to remove so much of the tree as overhangs his property." Id., citing Michalson, 275 Mass. at 233-234.  This rule has come to be known as the "Massachusetts rule."  See, e.g., Melnick v. C.S.X. Corp., 312 Md. 511, 520 (1988).

2.  Hawaii rule.  Shiel urges us to adopt the so-called "Hawaii rule," which grants neighbors a right of action to resolve disputes in court over healthy trees.  It allows a neighbor to require that the tree owner pay for damage and cut back branches and roots if the tree causes, or there is an imminent danger of it causing, sensible harm[3] to the neighbor's property.  Whitesell v. Houlton, 2 Haw. App. 365, 367 (1981). The neighbor could not hold the tree owner liable for harm caused by the tree casting shade or dropping leaves, flowers, or fruit.  Id.  The Hawaii rule, like the Massachusetts rule, allows the neighbor to retain the right to cut back overhanging branches or intruding roots.  Id.

---

[3] The court in Whitesell v. Houlton, 2 Haw. App. 365 (1981), did not define "sensible harm," and no Hawaii appellate court opinions have defined the phrase.  The only definition of "sensible" in Black's Law Dictionary that could fit the context here is "[p]erceptible through the senses; appreciable." Black's Law Dictionary 1569 (10th ed. 2014).

Shiel contends that the Massachusetts rule is outdated and should be replaced by the Hawaii rule because today people are living in closer proximity to one another on smaller tracts of land than they were when the Massachusetts rule was adopted. She argues that trees today are more likely to cause damage to neighbors' property and tree owners are better able to manage their trees, which justifies giving parties a right of action to resolve disputes in court.  The Rowells urge us not to disturb the Massachusetts rule, based on the doctrine of stare decisis and because, in their view, the Massachusetts rule is more sensible.  They argue that there is no compelling reason to abandon the Massachusetts rule and that upholding precedent supports certainty in the law.

3. <u>Stare decisis</u>.  The principle of stare decisis is not absolute.  <u>Stonehill College</u> v. <u>Massachusetts Comm'n Against Discrimination</u>, 441 Mass. 549, 562, cert. denied, 543 U.S. 979 (2004).  "Stare decisis is not, like the rule of res judicata, a universal inexorable command," but "[w]hether it shall be followed or departed from is a question entirely within the discretion of the court."  <u>Burnet</u> v. <u>Coronado Oil & Gas Co</u>., 285 U.S. 393, 405-406 (1932) (Brandeis, J., dissenting), quoting <u>Hertz</u> v. <u>Woodman</u>, 218 U.S. 205, 212 (1910).  However, adhering to precedent is our "preferred course because it promotes the evenhanded, predictable, and consistent development of legal

principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."  Payne v. Tennessee, 501 U.S. 808, 827 (1991).  "It also reduces incentives for challenging settled precedents, saving parties and courts the expense of endless relitigation."  Kimble v. Marvel Entertainment, LLC, 135 S. Ct. 2401, 2409 (2015).  "Parties should not be encouraged to seek reexamination of determined principles and speculate on a fluctuation of the law with every change in the expounders of it."  Mabardy v. McHugh, 202 Mass. 148, 152 (1909).  Reliance upon judicial precedent is of particular concern in "contract and property law cases, in which reliance upon existing judicial precedent often influences individual action."[4]  Halley v. Birbiglia, 390 Mass. 540, 545 (1983).

We may uproot precedent when "the values in so doing outweigh the values underlying stare decisis."  Franklin v. Albert, 381 Mass. 611, 617 (1980).  Overruling precedent requires something above and beyond mere disagreement with its analysis.  Stonehill College, 441 Mass. at 588 (Sosman, J., concurring) ("Thus, in order to overrule a prior case, it is not enough that some or all of the Justices of this court have some intellectual or academic disagreement with the earlier analysis

---

[4] We recognize that this is a tort case, but also one that implicates property law.

of the issue").  A lack of unforeseen problems caused by precedent justifies adhering to precedent unless there are developments that justify revisiting the law.  Id. at 588-589 (Sosman, J., concurring) (we are "disinclined to fix something that is not broken").

We would discern a need to change the Massachusetts rule if it were outdated and no longer fit the circumstances of contemporary life.  "One of the great virtues of the common law is its dynamic nature that makes it adaptable to the requirements of society at the time of its application in court."  Lewis v. Lewis, 370 Mass. 619, 628 (1976), quoting State v. Culver, 23 N.J. 495, 505, cert. denied, 354 U.S. 925 (1957).  We invite challenges to antiquated laws.  "When the rationales which gave meaning and coherence to a judicially created rule are no longer vital, and the rule itself is not consonant with the needs of contemporary society, a court not only has the authority but also the duty to reexamine its precedents rather than to apply by rote an antiquated formula."  Lewis, 370 Mass. at 620, 628 (abolishing interspousal tort immunity, which had developed when "common law treated husband and wife as 'a single person, represented by the husband'" [citation omitted]).  Our case law reflects our adaptability to fit such shifting needs, even with respect to real property, where the rules of stare decisis are particularly important.  We

once distinguished between types of visitors[5] in premises liability law derived from English common law, but concluded that the distinction could no longer be "justified in an urban industrial society." Mounsey v. Ellard, 363 Mass. 693, 706-707 (1973) (establishing common duty of reasonable care owed to all lawful visitors). In the seven years following Mounsey, we reformed premises liability law to be consistent with this decision. See Papadopoulos v. Target Corp., 457 Mass. 368, 372 (2010), citing Young v. Garwacki, 380 Mass. 162, 166 (1980).

4. Massachusetts rule is not outdated. We see no reason to consider the Massachusetts rule outdated. It may be true that people today are living in closer proximity to one another on smaller tracts of land than they were when the Massachusetts rule was adopted in the early Twentieth Century. But if changes in property ownership would lead us to believe that tree owners are now better able to monitor their trees, the same would be

---

[5] "If the plaintiff was an invitee, defined as a person invited onto the property by the property owner for the property owner's benefit, the property owner owed a duty to use reasonable care to keep the premises in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk. . . . If the plaintiff was a licensee, defined as a person who entered onto the landowner's property for the licensee's own convenience and pleasure, the property owner owed a duty only to forbear from inflicting wilful or wanton injury on him. . . . If the plaintiff was a trespasser, the property owner's only duty was to refrain from wanton and wilful misconduct." (Emphases in original; quotations and citations omitted.) Papadopoulos v. Target Corp., 457 Mass. 368, 371-372 (2010).

true for their neighbors to monitor and trim encroaching trees. It may be easier to recognize impending or potential harm to one's own property from overhanging branches and intruding roots than it would be for the tree owner to recognize what is happening next door. And even if it is also true that trees today are more likely to cause property damage to neighbors' property, it would be "undesirable to categorize living trees, plants, roots, or vines as a 'nuisance' to be abated." Melnick, 312 Md. at 520-521.

Other jurisdictions have referenced the Massachusetts rule as being outdated. See Herring v. Lisbon Partners Credit Fund, Ltd. Partnership, 2012 ND 226, ¶¶ 19-20; Lane v. W.J. Curry & Sons, 92 S.W.3d 355, 361 (Tenn. 2002); Fancher v. Fagella, 274 Va. 549, 555 (2007). A comprehensive analysis of the Massachusetts rule demands that we examine the rationale of other jurisdictions leading them to conclude our rule to be obsolete. A fair analysis of the parties' arguments also requires such an analysis because the plaintiff relied heavily on the analysis of other jurisdictions to support her argument and our review of these court opinions leaves our conclusion undisturbed.[6]

---

[6] Some jurisdictions note that the Massachusetts rule "has been" criticized for being outdated, but do not explain how changes in property ownership justify disregarding the Massachusetts rule for that reason. See, e.g., Fancher v.

We agree that the traditional rule of nonliability, which preceded the Massachusetts rule, is outdated with respect to unhealthy trees.  The law arose when land was so unsettled and uncultivated that the burden of inspecting it and putting it in a safe condition would have been unduly onerous and "out of all proportion to any harm likely to result."  W.L. Prosser & W.P. Keeton, Torts § 57, at 354 (4th ed. 1971).  The increased feasibility of inspecting for and resolving debilitated conditions on one's property removes the justification for a law that would discourage improvements to one's land.  See, e.g., Young, 380 Mass. at 168 (doing away with landlord-tenant liability law that discouraged repairs of rented premises).  The same rationale does not apply to the Massachusetts rule, which

---

Fagella, 274 Va. 549, 555 (2007) (adopting Hawaii rule after stating that "[t]he 'Massachusetts [r]ule' has been criticized on the ground that it is unsuited to modern urban and suburban life").  See also Herring v. Lisbon Partners Credit Fund, Ltd. Partnership, 2012 ND 226, ¶ 19, quoting Lane v. W.J. Curry & Sons, 92 S.W.3d 355, 361 (Tenn. 2002) (criticizing Massachusetts rule for being outdated).  We trace this back to Lane, which incorrectly interpreted and quoted another jurisdiction as if it had criticized the Massachusetts rule for being outdated.[6]  Lane, supra, citing Chandler v. Larson, 148 Ill. App. 3d 1032, 1036-1037 (1986) ("The Massachusetts Rule, however, has been criticized as being outdated, having evolved in an earlier time when land was mostly unsettled and people lived predominately in rural settings").  The criticism in Chandler was that the "traditional rule of nonliability," not the Massachusetts rule, was outdated, having "developed at a time when land was mostly unsettled and uncultivated."  Chandler, supra at 1036, quoting Mahurin v. Lockhart, 71 Ill. App. 3d 691, 692 (1979).  The traditional rule shielded property owners, out of necessity, from liability for defective or unsound trees.  Chandler, supra, quoting Mahurin, supra at 692-693.

pertains only to healthy trees.  See Kurtigian, 348 Mass. at 290.

Shiel does not point to consequences of the Massachusetts rule that would not have been thoroughly appreciated by this court when Michalson and Ponte were decided.[7]  The growth of trees "naturally and reasonably will be accompanied by the extension of boughs and the penetration of roots over and into adjoining property of others."  Michalson, 275 Mass. at 233. Our resolution has been and remains to authorize the cutting back of overhanging branches and intruding roots.

5.   Benefits of Massachusetts rule.  There are multiple benefits to the Massachusetts rule still relevant to circumstances of contemporary life.  The rule simplifies assignment of responsibility.  See Sterling v. Weinstein, 75 A.2d 144, 148 (D.C. 1950) (adopting Massachusetts rule because it leaves "no doubt as to the rights and obligations of the parties").  It also minimizes legal costs to parties and the unnecessary burdening of courts.  Other courts have recognized as much.  See, e.g., Richmond v. General Eng'g Enters. Co., 454 So. 2d 16, 17 (Fla. Dist. App. Ct. 1984) ("It seems to us that the recognition of an action of this type to redress a claimed

---

[7] Shiel challenges the unfairness of the Massachusetts rule and argues that it replaces the law of orderly judicial process with self-help as the only way to adjust the rights and responsibilities of disputing neighbors.

wrong which might otherwise be obviated by the time-honored remedy of self-help would represent a wasteful and needless use of the judicial system").  Furthermore, we were concerned in Michalson, 275 Mass. at 234, about vexatious lawsuits.  The Massachusetts rule today, just as it did when Michalson was decided, may prevent unnecessary legal harassment from neighbors who merely have an axe to grind for reasons other than purported tree problems.

Conclusion.  For these reasons, we decline to fell judicial precedent and instead reaffirm the Massachusetts rule established in Michalson and Ponte.  We retain the law that an individual whose property is damaged by a neighbor's healthy tree has no cause of action against a landowner of the property upon which the tree lies.  The District Court judge's order allowing the defendants' motion to dismiss is affirmed.

So ordered.