Samuel S. Tripp, Spec. Ref.
Reference pursuant to an order dated January 20, 1969 made by consent to hear and determine the issues presented in this action (CPLR 4317, subd. [a]).
Late in 1936 or early in 1937 six two-story and basement brick dwellings were erected by a builder on as many contiguous lots on the north side of 52nd Drive between 73rd and 74th Streets, Maspeth, Queens County. The parties to this action purchased two of these dwellings. The evidence is that the deeds of conveyance granted the respective properties by descriptions which divided them by a party wall. The surveys and filed approved building plans show that this party wall is 8 inches wide, through the middle of which runs the lot line.
Plaintiffs’ dwelling is set back about 10 inches, to which extent the party wall, built of face brick, is exposed on the left side of the entrance thereto. The other side thereof is in the interior of defendants’ dwelling. In front of this party wall is a brick divider along the lot line, on either side of which are entrance steps and stoops. In front of this divider is a 24-inch-wide dirt strip, extending to the sidewalk, that separates the properties. A walk leading to the stoop steps of the two houses is on each side of this strip. Fourteen inches of the width of the strip are owned by the plaintiffs and 10 inches by the defendants.
Plaintiffs moved into their house in May, 1937, and the defendants in August, 1937. The builder had not planted any shrubbery. Consequently, the parties did so in the front and rear of their respective properties. More specifically, in 1939, the plaintiffs planted privet hedges within their 14-inch-wide strip in front of their property, about 6 inches from the lot line. In due course these hedges grew to the height of some 30 inches, the overhanging branches of which indubitably extended over part of defendants’ 10-inch-wide strip.
In 1966 plaintiffs affixed a mailbox by means of two half-inch screws to the approximately 10-inoh-wide exterior extension of the party wall outside their dwelling. Apparently, this was the last straw in the increasing mutual irritations between these two neighboring families, each of which insisted upon its literal or technical right to confine the shrubbery each had planted, including the overhanging branches and leaves, to the lot line dividing their properties. Finally, by letter dated August 8, *829 1966, defendants’ attorney demanded that plaintiffs remove the mailbox and otherwise desist from “ encroaching on their property
On September 19,1966, plaintiffs commenced this action upon a complaint alleging two causes of action. Defendants responded on October 6, 1966 by asserting four counterclaims in their answer. At the opening of the trial plaintiffs discontinued with prejudice their second cause of action, and defendants their fourth counterclaim.
In May, 1966 defendant Anna Hahne cut the privet hedges, that plaintiffs had planted years ago at a cost of some $12 to $15 in front of their property, and loosened some of the bricks that had been placed in the ground next to their paved entrance-way. The hedges thus cut were not replaced but grew back again without further disturbance; nor did defendants remove the mailbox. Absent proof of monetary damage, plaintiffs’ first cause of action was in that respect dismissed at the conclusion of the trial, leaving for disposition only the question of whether defendants should be “ enjoined from interference with the bushes planted ’ ’ in the front of plaintiffs ’ property.
Also dismissed at the end of the trial were defendants’ first counterclaim for the removal of the privet hedges in front of plaintiffs’ property and damages, and their third counterclaim for damages and injunctive relief based upon the alleged continuing trespass commencing in the summer of 1966, when the plaintiffs allegedly 1 ‘ tore out, chopped, cut and destroyed ’ ’ the hedges in the rear of defendants’ property. Only the second counterclaim, for the removal of the mailbox and paint on the course of brick fronting the disputed portion of the party wall on plaintiffs’ side of the lot line, survived'the dismissal motion at the end of the trial.
No proof of damage of any kind was adduced in connection with the mailbox. The paint on the course of brick fronting the party wall has already been removed. Consequently, left for determination are the rights of the parties in respect to the mailbox and the front hedges.
To say the least, there is a paucity of cases on or even near the trivial dispute here involved. General principles must therefore be invoked in reaching a solution without benefit of examples. Varriale v. Brooklyn Edison Co. (252 N. Y. 222, 224) states: “ A party wall is for the common benefit of contiguous proprietors. Neither may subject it to a use whereby it ceases to be continuously available for enjoyment by the other (Brooks v. Curtis, 50 N. Y. 639; Negus v. Becker, 143 N. Y. 303; Everett v. Edwards, 149 Mass. 588). Each may subject it to whatever *830 uses are proper to a wall, if the like freedom of the other is not curtailed thereby.”
Although plaintiffs’ dwelling is not supported by the exposed front 10-inch extension of the party wall, it nevertheless, did not lose its characteristic as party wall, straddling, as it does, the lot line dividing the two dwellings. In affixing the mailbox in the manner described, plaintiffs did not interfere with or curtail the use by defendants of this party wall for the support and the division of their house from that of the plaintiffs.
General rules concerning shrubs on boundary lines are stated in New York Jurisprudence (vol. 1, § 59, p. 282, and § 64, p. 285) as f ollows:
“ Where shrubbery is placed along the boundary line so that the roots extend into the adjoining land and during gradual growth the shrubbery encroaches upon a strip of the adjoining property a right arises in favor of the owner not to have the bushes destroyed, but permitted to continue their natural growth; in such case both parties have the right of ordinary trimming and clipping.”
“ If a landowner moves a hedge along a boundary line he is liable in damages to the owner of the adjoining premises inclosed by the hedge, although during the gradual growth of the hedge it has encroached somewhat upon the defendant’s land. Recovery for damages from overhanging branches, however, depends upon the presence of actual injury to the adjoining landowner.”
The extent of the alleged encroachment of the hedge over defendants’ 10-inch-wide strip was not shown. Nor was any attempt made to establish damage or even inconvenience flowing therefrom.
In Spadaro v. Putter (108 N. Y. S. 2d 343, 345; cited for the text in New York Jurisprudence, supra), the court held that the planting, maintenance and growth of bushes considered a boundary line separating plaintiffs’ property and that of defendant during a 25-year period did not result in title by adverse possession since there was no substantial permanent enclosure. The same facts, however, required “ the conclusion that a right arose not to have the bushes destroyed but permitted to continue in their natural growth until they died or were removed by plaintiffs. Both parties had the right of ordinary trimming and clipping. ’ ’
‘1 Ordinary trimming and clipping ’ ’ obviously does not mean the destruction of or injury to the main stalks of the hedge here involved. Because of its propensity to enlarge itself by natural growth, defendants may trim so much of it as extends over their 10-inch-wide strip. Plaintiffs, on the other hand, *831 should trim their own side and the front of the hedge and keep it down to a height flush with the lower part of the brick divider, provided that such height can be maintained without destruction or unreasonable injury to the main stalks of the shrubs composing it.
It is to be hoped that the parties, neighbors since 1937, will no longer permit their differences over trivialities to interfere with the enjoyment of their respective homes. Neither side has shown any damage suffered, or likely to be suffered, either from the hedge or the location of the mailbox. In these circumstances, equity will not interfere to uphold what at most is but a technical right. (See Mollenhauer v. Wolfe, 118 Misc. 390, 394, affd. 207 App. Div. 869.)