EDWARD C. ROWE, JOSEPHINE K. ROWE, AND THE NEW YORK CENTRAL MUTUAL FIRE INSURANCE COMPANY v. NOAH W. McGEE AND JEANETTE K. McGEE

No. 6925DC181

(Filed 18 June 1969)

1. Nuisance § 1;   Negligence § 47— decaying tree — damage to adjoining landowner

Where landowner knew that the tree on his property was decayed as a result of disease or other natural cause and was liable to fall and damage the property of the adjoining landowners, he was under a duty to eliminate the danger and could not with impunity place the burden to remove the tree on adjoining landowners.

2. Nuisance § 1— decaying tree — damage to adjoining landowners — contributory negligence

In plaintiffs' action for damages incurred when a decayed and rotted

·tree located on defendant's adjoining land fell onto their house, issue of plaintiffs' contributory negligence was properly submitted to the jury where the evidence would permit a finding that plaintiffs had led defendant to believe that the tree had been cut and removed, in that some eight to twelve months prior to the fall plaintiffs had contacted defendant concerning the dangerous condition of the tree and had received defendant's permission to cut it down.

APPEAL by plaintiffs from *Evans, J.,* 18 November 1968 Regular Civil Session, CATAWBA County District Court.

Edward C. Rowe (Edward), Josephine K. Rowe (Josephine) and New York Central Mutual Fire Insurance Company (insurer) instituted this civil action against Noah W. McGee (defendant) and Jeanette K. McGee (*feme* defendant). Edward and Josephine sought to recover $5,000 plus interest for damages to their brick veneer house located in Newton Township, Catawba County. The insurer, as subrogee to the rights of Edward and Josephine, sought to recover $2,900, which was the amount paid by the insurer to Edward and Josephine pursuant to a homeowners insurance policy. In their complaint, it was alleged that the defendants "were the owners in fee simple of a certain tract of land situated" immediately north of Edward and Josephine's tract of land; there was a common boundary line between the two tracts; a large oak tree was situated on the defendants' tract, "approximately four feet from the common boundary line"; the "tree was in an extremely rotted condition and filled with honey bees"; Edward advised the defendant of this condition on at least two occasions and had requested its removal before it fell onto his house; the defendants negligently allowed the tree to remain standing, when they knew or should have known of its dangerous and rotten condition and its close proximity to Edward and Josephine's house and after the defendant had been given notice by Edward; on 22 April 1967, the tree was blown down onto Edward and Josephine's house, thereby damaging the house in the amount of $5,000.

In their answer, the defendants admitted that the tree was situated on their property; it was located a short distance from the common boundary line; and, on 22 April 1967, it blew down and came to rest on Edward and Josephine's house. In a further answer the defendants alleged that their ·tract of land was a vacant lot; Edward and Josephine asked permission to cut and remove the tree located thereon; the defendants advised Edward and Josephine "that they had no objection to the removal of said tree"; "thereafter the defendants did not know that the tree had not been removed"; on 22 April 1967 the tree was blown down by the strong wind of a sudden and violent storm; this storm "was unusual, unprecedented and un-

foreseeable for the area in question"; the tree "was capable of with-standing the stress caused by normal and foreseeable winds"; the damage was, therefore, "caused by an unforeseeable Act of God for which the defendants are in no way liable or responsible". The defendants further alleged that "if the tree in question was in any way decayed, hollow and unsound, the defendants had no knowledge or notice of the same and in the exercise of due care had no reason to know of the same"; the defendants were, therefore, not negligent; but even if the defendants were negligent, Edward and Josephine were contributorily negligent, because they knew of the tree's location and dangerous condition, but "failed and neglected to take any steps to cause said tree to be removed and to avoid any danger therefrom".

The evidence tends to show that the defendants sold the tract of land presently owned by Edward and Josephine to Charles Hedrick in 1964 and that Hedrick then built a house on the tract, which he thereafter sold to Edward and Josephine in August 1964. The evidence further tends to show that the oak tree in question was blown down on 22 April 1967 during a violent wind and rain storm; it broke off near the surface of the ground and came through the roof and northern portion of Edward and Josephine's house, thereby causing damage in the amount of $5,000; and pursuant to the extended coverage provision of their homeowners insurance policy with the insurer, Edward and Josephine received $2,900 on repairs to the house.

Edward testified that the tree was fifty to sixty feet high; it was located approximately 25 feet from the northern end of his house, at a point three or four feet from the common boundary line on the defendants' property; "[t]he tree was rotten to the top and had a nest of honey bees in the bottom"; he "knew the tree was going to fall because it was leaning" toward his house; he "had not been there six months when [he] thought the tree should come down"; he informed the defendant of the condition of the tree on at least two occasions; and the defendant told him that "Mr. Hedrick built the house and that Charles [Hedrick] was suppose [sic] to cut the tree down before the house was built".

The trial judge submitted the following issues to the jury:

"1.   Was the property of the Plaintiff damaged by the negligence of the Defendant as alleged in the complaint?

2.   If so, did the Plaintiff by his own negligence contribute to causing his damage as alleged in the answer?"

Both issues were answered in the affirmative by the jury. The trial judge thereupon entered a judgment to the effect that Edward, Josephine and the insurer have and recover nothing. The three plaintiffs then appealed to this Court claiming error in the trial judge's charge to the jury and in the submission of the contributory negligence issue to the jury.

*Larry W. Pitts and Wendell Gene Sigmon for plaintiff appellants.*

*Patrick, Harper & Dixon by Charles D. Dixon for defendant appellees.*

CAMPBELL, J.

[1]    This case presents for determination the question of who has the responsibility for a tree which has become dangerous due to a rotten condition resulting from disease or other natural causes.

The evidence reveals that the defendants sold the tract of land presently owned by Edward and Josephine to Charles Hedrick in 1964; Hedrick then constructed a house and sold it to Edward and Josephine in August 1964; the defendants retained a second tract of land which adjoined the property of Edward and Josephine; a large oak tree was located on this second tract; the tree was hollow and partially rotten and it was leaning in a manner which would indicate that sooner or later it would fall; this condition existed at the time Hedrick acquired the property from the defendants and at the time the house was built. Under these circumstances, what was the responsibility of the defendants for this tree? Our research does not disclose any decisions in North Carolina on the point, and the decisions from other jurisdictions vary.

The Restatement of the Law of Torts, § 840, p. 310, provides:

"Where a natural condition of land causes an invasion of another's interest in the use and enjoyment of other land, the possessor of the land containing the natural condition is not liable for such invasion."

This section states that the term "natural condition" comprehends trees which are the result of a natural condition and not trees which have been planted by man.

In the instant case, there is nothing to show that the tree in question did not grow on and become a part of the land by natural condition. Pursuant to the Restatement rule, *supra,* the defendants were, therefore, under no obligation and had no responsibility toward Edward and Josephine for the tree. Edward and Josephine had the

entire burden of protecting their house and property from this tree in the event it should fall.

A similar case confronted the Supreme Court of Mississippi in *Griefield v. Gibraltar Fire & Marine Ins. Co.*, 199 Miss. 175, 24 So. 2d 356. The defendant in that case acquired a tract of land on which a large oak tree was growing. A very large limb extended from this tree across a common boundary line and over the roof of the plaintiff's adjacent dwelling. The plaintiff wrote the adjoining property owner and called her attention to the limb. The defendant promised to take care of the situation, but she did not do so. During a severe windstorm some three years later, the limb was blown off of the tree and onto the plaintiff's dwelling, thereby causing considerable damage. The Mississippi Court held that, since there was nothing in the evidence to indicate that the tree was not of natural growth, the defendant was under no obligation to remove the limb. Therefore, her gratuitous promise to remove it was not binding on her and the plaintiff had no right of recovery. Mississippi thus follows the Restatement rule, *supra.*

In *Sterling v. Weinstein*, 75 A. 2d 144, branches of two large trees on the defendant's property extended across a common boundary line. The leaves and buds from these trees clogged the gutters of the plaintiff's building, thereby causing damage. The plaintiff sought to recover for the damage and sought an order requiring the defendant to cut, and to keep cut, the overhanging branches. The Municipal Court of Appeals for the District of Columbia denied recovery as it was a sound tree and not a nuisance as such. Plaintiff had the right to prune it at the boundary line. In so doing, the Court refused to adopt the natural growth doctrine as enunciated in the Restatement, *supra.* The Court stated:

> "[W]e think it would often be difficult to ascertain whether a tree of natural growth might not be in part the result of human activity, such as cultivating, fertilizing, trimming, etc. The distinction between purely natural conditions and conditions which in some degree are the result of man's activity may be practicable and even necessary in rural areas, but in our opinion such distinction cannot reasonably be made in our jurisdiction which is almost entirely urban."

In *Kurtigian v. City of Worcester*, 348 Mass. 284, 203 N.E. 2d 692, the defendant owned a vacant lot on which a large, dead elm tree was located. A large limb from the tree fell across a common boundary line onto the plaintiff's property. The plaintiff was in his yard and was struck by the limb, thereby sustaining serious per-

sonal injuries. The Massachusetts Court held that the maintenance of such a tree near a property line constituted a private nuisance. It was stated:

". . . Public policy in a civilized community requires that there be someone to be held responsible for a private nuisance on each piece of real estate, and particularly in an urban area, that there be no oases of non-liability where a private nuisance may be maintained with impunity."

The Massachusetts Court thereupon permitted the plaintiff to recover. It was then stated:

". . . It has not been argued that we should adopt a distinction between trees naturally on land and those which have been planted, even assuming it is possible to ascertain the origin of this particular tree. . . ."

Thus, the Massachusetts Court did not specifically disagree with the Restatement rule, *supra*. However, it indicated that this Restatement view would not be adopted.

In *Davey v. Harrow Corporation*, 1 Q.B. 60 (1958), the plaintiff's house was damaged when it was penetrated by the roots of trees located on adjoining lands. The plaintiff instituted an action for nuisance against the adjoining landowners to recover damages. Lord Goddard, speaking for the Court, held: "In our opinion it must be taken to be established law that if trees encroach, whether by branches or roots, and cause damage, an action for nuisance will lie" against the owner of the land on whose property the trees stood. This case pointed out that no distinction was to be drawn between trees which were planted and trees which were self-sown and the fact that the damage was caused by natural growth was no defense.

In *Chambers v. Whelen*, 44 F. 2d 340 (4th Cir. 1930), 72 A.L.R. 611, the plaintiff sought to recover damages for personal injuries sustained when a dead tree located on rural property fell onto a public highway. The Court held that, since no duty was imposed upon a landowner of rural lands to inspect trees located thereon, the defendant was not liable to the plaintiff for such personal injuries. Judge John J. Parker, speaking for a unanimous Court consisting of himself and Judges Soper and Groner, stated:

"It will be noted that the question is not as to the liability of a city or suburban dweller who plants or maintains trees within or overhanging a highway. Nor is it as to the liability of one who, with knowledge of the dangerous condition of a tree, maintains it on his property when it is liable to fall and injure the prop-

erty of adjoining owners or persons passing in a public street or highway. Nor does it involve the duty or liability of one who erects an artificial structure near a highway. In all of these cases the greater probability of injury to the person or property of others imposes a higher degree of care upon the owner of the tree or structure. The question here is the narrow one as to whether it is the duty of the owner to inspect trees growing naturally upon rural lands, for the purpose of determining whether, through natural processes of decay, they have become dangerous by reason of their proximity to a highway. . . ."

While this case does not determine or answer the question in the instant case, it does imply that, where a landowner knows that he has a tree on his property which is in a dangerous condition and which is likely to fall and injure the property of an adjoining landowner, he has a duty to eliminate such danger.

[1, 2] In the instant case where the defendants knew that the tree on their property was decayed and liable to fall and to damage the property of Edward and Josephine, we think and hold that the defendants were under a duty to eliminate the danger and could not with impunity place such burden to remove the tree on Edward and Josephine. However, the evidence would permit a finding that the predecessor in title, Charles Hedrick, had procured permission from the defendant to cut and remove this tree; he was supposed to have so cut and removed it before building the house in question; the tree was still standing in August 1964 when Edward and Josephine purchased the house; Edward and Josephine realized the danger and contacted the defendant eight to twelve months prior to 22 April 1967; and they received permission from the defendant to cut and remove the tree. The evidence of the defendants is susceptible to the interpretation that by their conduct, Edward and Josephine led the defendants to believe that the tree had been cut and removed and the dangerous condition eliminated. Therefore, it was not error to submit the contributory negligence issue to the jury. The instructions of the trial judge to the jury were adequate, and we find no error in the charge. Under the evidence of the case, the determination of the facts was for the jury, and the jury found those facts contrary to the contentions of the three plaintiffs.

The judgment of the trial court is

Affirmed.

Brock and Morris, JJ., concur.