510 A.2d 592

**Jonathan  MELNICK,**

v.

**C.S.X.  CORPORATION  et  al.**

**No.  84,  Sept.  Term,  1986.**

Court  of  Special  Appeals  of  Maryland.

July  3,  1986.

Certiorari  Granted  Nov. 10, 1986.

Richard W. Winelander (Barry T. Canaras, Melvin J. Kodenski and Kodenski & Canaras, on brief), Baltimore, for appellant.

Stephen B. Caplis (H. Russell Smouse, Melnicove, Kaufman, Weiner & Smouse, P.A. and Richard C. Keene, on brief), Baltimore, for appellees.

Argued before GILBERT, C.J., and GARRITY, ALPERT, JJ.

ALPERT, Judge.

The case before us is one of first impression in Maryland. It presents one simple question for our resolution:

Whether a landowner in a developed or urban area has a cause of action against the adjoining property owner when tree limbs, vines and leaves, which originate from the latter's property, cause injury to the former's property.

We hold that under the circumstances of the instant case, there is no cause of action and that the only available remedy is the Massachusetts Rule of Self-Help. Thus, the trial court was correct in granting the defendant's motion for summary judgment.

## THE FACTS

As the instant case comes before this court on an expedited appeal, we shall simply restate the Agreed Statement of the Facts.

1. Sometime during the year of 1978, Your Appellant, Jonathan Melnick, purchased the real property located in Baltimore City, known as 900–920 E. 25th Street (hereinafter referred to as the "Melnick Property"). Sharing the common boundary with this property is the Railroad Right-of-Way passing through the City, North of 25th Street. (This property is hereinafter referred to as the "Railroad Property").

2.  At the time of the purchase of the Melnick Property, there was a 35,000 square foot building (hereinafter referred to as "the building") situated at or near the common boundary with the Railroad Property.  Prior to Melnick's purchase of the property he knew the roof of this building was in poor condition and had plans for its replacement which occurred immediately after the purchase.  Since the roof replacement, Melnick has experienced constant clogged drains, standing water, roof deterioration and some water damage to the interior of the building.  Moreover, there have been several instances of water damage to stored merchandise.

3.  The damage to the building and roof was caused by overhanging limbs, vines, leaves and/or other natural growth extending from the adjacent Railroad Property.  Neither Melnick nor anyone else to Melnick's knowledge, knows if the trees and vines in question were natural growth or planted by the Defendant and/or its agents.  While Melnick claims no expertise in landscaping, he did notice from airplane flights over the property, that it appeared to him the foliage was planted in an effort to diminish erosion.

4.  Neither the Defendant nor any of its agents planted any of the trees and vines at issue.  In fact, the defendant has a strict policy against planting trees, bushes or foliage on B & O Railroad Property *per se.*

5.  Melnick, on numerous occasions, advised the defendant of the imminent danger of harm as well as the actual danger and harm that was being done by the branches, trees, and vines and leaves.

6.  On at least one occasion, Melnick attempted to remedy the situation by himself.  At cost to him of $1,000.00, he cut down several trees, however, the relief was only temporary since the trees and foliage would rapidly grow back.

Melnick filed suit in the Circuit Court for Baltimore City seeking damages for Private Nuisance, Negligence and Trespass.  C.S.X. responded by filing a Motion for Summa-

ry Judgment alleging that, as a matter of law, the adjoining landowner is not responsible for the results of natural growth on his land that damages the land or property of his neighbor. The trial judge agreed and ruled in C.S.X.'s favor.

## THE LAW

In order to understand the common law principles that are at the root of the issue in this appeal, we must first understand two generative rules: (1) the Massachusetts Self-Help Rule and (2) the Restatement Rule.[1]

### 1. *The Massachusetts Rule: Self-Help*

In *Michalson v. Nutting*, 275 Mass. 232, 175 N.E. 490 (1931), the Supreme Judicial Court of Massachusetts announced that a property owner, whose house had been damaged by encroaching roots from his neighbor's land, had no cause of action against him, but had a well-recognized right to resort to self-help and cut off the intruding growth. The policy behind this rule of self-help was that

> [a]n owner of land is at liberty to use his land, and all of it, to grow trees. Their growth naturally and reasonably will be accompanied by the extension of boughs and the penetration of roots over and into adjoining property of others.
>
> .    .    .    .    .
>
> The neighbor, though without right of appeal to the courts if harm results to him, is, nevertheless, not without remedy: ... His remedy is in his own hands. The common sense of the common law has recognized that it is wiser to leave the individual to protect himself, if harm results to him from this exercise of another's right to use his property in a reasonable way, than to subject that other to the annoyance, and the public to the burden, of

---

**1.** For a general discussion of the rules, see 1 Am.Jur.2d *Adjoining Landowners* § 122 (1962).

actions at law, which would be likely to be innumerable and, in many instances, purely vexatious.

*Id.* 175 N.E. at 490–91.

### 2. *The Restatement Rule: Natural/Artificial Distinction*

The Restatement Rule [2] adopts the rule of non-liability espoused in the Massachusetts Rule, but limits it to situations where the damage is caused by a "natural condition" of the land. As explained in Comment b to Section 363,

> "Natural condition of the land" is used to indicate that the condition of land has not been changed by any act of a human being, whether the possessor or any of his predecessors in possession, or a third person dealing with the land either with or without the consent of the then possessor. It is also used to include the natural growth of trees, weeds, and other vegetation upon land not artificially made receptive to them. On the other hand, a structure erected upon land is a non-natural or artificial condition, as are trees or plants planted or preserved, and changes in the surface by excavation or filling, irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces.

In sum, the rule of non-liability applies only where there is a natural condition. In other cases, however, where damage results from a non-natural or artificial condition, the rule is one of liability. This is reflected in the *Restatement (Sec-*

---

**2.** *See Restatement (Second) of Torts* § 363 (1965):

> (1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.
>
> (2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

*See also* Section 840 (1979) (Failure to Abate Harmful Natural Condition of Land).

*ond) of Torts* § 364, which was approved recently in *Tadjer v. Montgomery County*, 61 Md.App. 492, 487 A.2d 658 (1985). We held in *Tadjer* that:

> If the defendants knew or should have known that the *artificial condition* created by them involved an unreasonable risk of physical harm to others, then they have a duty to make safe or warn of the dangerous condition.

*Id.* at 502, 487 A.2d 658 (emphasis in original).

### 3. *Application and Modification of the Two Rules*

The case most often cited for its examination of the policies behind the two rules is *Sterling v. Weinstein*, 75 A.2d 144 (D.C.1950). Very much like the facts in the case *sub judice*, leaves and buds from the defendant's overhanging branches had fallen onto the plaintiff's building, clogged rain gutters thereon, and resulted in water damage to the building. After reviewing the applicable case law, the District of Columbia court concluded:

> [W]e think the cases are in agreement that trees ordinarily are not nuisances; that overhanging branches which merely cast shade or drop leaves on the land are not nuisances; that if under any circumstances overhanging branches or protruding roots do constitute a nuisance it is only when they do sensible or substantial harm; and that, whether nuisances or not, a landowner may always cut away to his property line branches and roots from trees of the adjoining owner.

*Id.* at 147 (footnote omitted). Looking next to the Restatement and Massachusetts Rules, it rejected the Restatement's natural/artificial distinction as one which "cannot reasonably be made in our jurisdiction which is almost entirely urban." *Id. See Prosser and Keeton on Law of Torts* § 57 p. 391 (5th ed. 1984). Instead, it chose the Massachusetts Rule and explained, at page 148:

> The simplicity and certainty of the Massachusetts rule appeals to us. It leaves no doubt as to the rights and obligations of the parties. While it places the burden on the owner of land to protect himself by cutting the

invading branches and roots, generally that burden is not great. It is of some significance that in this and many other jurisdictions there have been no reported cases involving this question. This would indicate to us that generally these questions between adjoining owners may be adjusted without the aid of courts and that the self-help rule is sufficient.

There was, however, a dissenting opinion in *Sterling,* wherein Chief Judge Clayton said:

> I have no doubt that ["self-help"] is *one* of his remedies; but I do not agree that it is his only one .... and other cases in the majority opinion support this view. I do not agree that he must climb onto his roof and construct scaffolding (or engage others to do the dangerous work for him) and saw off the limbs of defendant's trees. I think he has the right to demand that defendant abate the nuisance or pay for the damage caused thereby, just as he would have the right to demand that an adjoining property owner remove an unsafe structure which constituted a threat of danger.

*Id.* at 148 (citation omitted).

Since *Sterling* there have been several cases that ostensibly would appear to be consistent with the dissenting opinion. These cases, which we note are factually distinguishable, provide an in-depth examination of the purposes and policies of those rules.

In *Rowe v. McGee,* 5 N.C.App. 60, 168 S.E.2d 77 (1969), the North Carolina court addressed the issue of who has the responsibility for a tree which has become dangerous due to a rotten condition resulting from disease or other natural causes. Much of the discussion in that case focused on the fact that the tree was one of natural condition. The *Rowe* court noted that the natural/artificial distinction, as imposed by the Restatement, had received only lip-service in recent years; therefore, whether the dangerous condition was natural or otherwise was of no significance. Most enlightening, however, was its discussion of a recent Massa-

chusetts case, *Kurtigian v. City of Worcester*, 348 Mass. 284, 203 N.E.2d 692 (1965), where it was stated:

> Public policy in a civilized community requires that there be someone to be held responsible for a private nuisance on each piece of real estate, and, particularly in an urban area, that there be no cases of nonliability where a private nuisance may be maintained with impunity. 348 Mass. at 291, 203 N.E.2d at 696.

168 S.E.2d at 80 (emphasis added). Bolstered with this statement of policy, the *Rowe* court held, in part relevant to our discussion, that:

> Where the defendants knew that the tree on their property was decayed and liable to fall and to damage the property of [his neighbors], we think and hold that the defendants were under a duty to eliminate the danger and could not with impunity place such burden to remove the tree on [the plaintiffs].

*Id.* at 81 (emphasis added).[3] In view of the earlier discussion in *Rowe*, rejecting the Restatement Rule, this holding is applicable to both natural and artificial conditions.

The *Kurtigian* policy statement was relied on again in *Barker v. Brown*, 236 Pa.Super. 75, 340 A.2d 566 (Pa.1975), where the Superior Court of Pennsylvania reversed a lower court's order of summary judgment for the defendant and held a landowner liable for damage when a large and decaying tree on his property fell upon the adjoining landowner's property. As in *Rowe*, the Pennsylvania court rejected the natural/artificial distinction, noting 340 A.2d at page 568:

> Though few cases directly on point have been decided in other jurisdictions, it appears that most courts, when

---

**3.** The *Rowe* court, however, further determined that the plaintiffs were contributorily negligent in that they had informed the defendant they would remove the tree, but had failed to do so. This outcome does not affect the holding of the case with respect to the defendant's duty.

faced with these facts, have not opted to follow the *Restatement* view.

It then proceeded to set forth the following rule at page 569:

[A] possessor of land in or adjacent to a developed or residential area is subject to liability for harm caused to others outside of the land by a defect in the condition of a tree thereon, if the exercise of reasonable care by the possessor

(a) would have disclosed the defect and the risk involved therein, and

(b) would have made it reasonably safe by repair or otherwise.

The most recent decision to reject both the Restatement and Massachusetts Rule, as well as the holding in *Sterling v. Weinstein, supra,* is *Whitesell v. Houlton,* 2 Hawaii App. 365, 632 P.2d 1077 (1981). The issue there, as here, was whether the defendant had any duty to cut branches extending into the plaintiff's property and was therefore liable for any resulting damage or cost of cutting the branches. The Hawaii court first reviewed the treatment of this issue in the various jurisdictions including Massachusetts, Washington, D.C., California, Washington, New Jersey, and Virginia. *Id.* 632 P.2d at 1078–79.[4] Next it considered *Sterling v. Weinstein*'s adoption of the Massachusetts Rule and its "simple and certain" rationale, but questioned "whether it is realistic and fair," *id.* at 1079 (footnote omitted). The court concluded:

Because the owner of the tree's trunk is the owner of the tree, we think he bears some responsibility for the rest of the tree.

.     .     .     .     .

---

4. Those cases were, respectively, *Michalson v. Nutting, supra; Sterling v. Weinstein, supra; Shevlin v. Johnston,* 56 Cal.App. 563, 205 P. 1087 (1922); *Gostina v. Ryland,* 116 Wash. 228, 199 P. 298 (1921); *Ackerman v. Ellis,* 81 N.J.L. 1, 79 A. 883 (1911); and *Smith v. Holt,* 174 Va. 213, 5 S.E.2d 492 (1939).

We hold that non-noxious plants ordinarily are not nuisances; that overhanging branches which merely cast shade or drop leaves, flowers, or fruit are not nuisances; that roots which interfere only with other plant life are not nuisances; that overhanging branches or protruding roots constitute a nuisance only when they actually cause, or there is imminent danger of them causing, sensible harm to property other than plant life, in ways other than by casting shade or dropping leaves, flowers, or fruit; that when overhanging branches or protruding roots actually cause, or there is imminent danger of them causing, sensible harm to property other than plant life, in ways other than by casting shade or dropping leaves, flowers, or fruit, the damaged or imminently endangered neighbor may require the owner of the tree to pay for the damages and to cut back the endangering branches or roots and, if such is not done within a reasonable time, the damaged or imminently endangered neighbor may cause the cutback to be done at the tree owner's expense.

However, we also hold that a landowner may always, at his own expense, cut away only to his property line above or below the surface of the ground any part of the adjoining owner's trees or other plant life.

*Id.*

### The Maryland Rule

The logic of this "Hawaiian Rule" is somewhat tantalizing, in view of modern day demographics forcing residential, commercial and industrial elements closer to one another. *See* D. Noel, *Nuisances From Land In Its Natural Condition*, 56 Harv.L.Rev. 772, 797–98 (1943). Although ostensibly "fair and reasonable," we resist this temptation and choose instead to adopt the "simplicity and certainty" of the Massachusetts Rule. To hold otherwise would be an open invitation to countless disputes between neighbors concerning encroaching vegetation, which could be remedied more efficiently through "self-help" rather than through costly and burdensome litigation. This deci-

sion, of course, does not affect our earlier holding in *Hensley v. Montgomery County*, 25 Md.App. 361, 334 A.2d 542 (1975), that where a landowner's property abuts a public highway the duty of inspection in rural and suburban areas is not the same as in urban and developed areas.[5] Nor are we concerned with the liability of adjoining landowners for rotted trees and limbs that cause substantial damage to their neighbors.[6] These issues are not before us, and we express no opinion as to them.

The narrow case that was before the circuit court concerned damage caused by clogged rain gutters. The trial judge correctly applied the Massachusetts Rule of Self-Help and held there to be no cause of action. There was no error.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.

### APPENDIX

I. These cases recognize a duty to inspect trees (for disease or other defects) that lie adjacent to property other than public highways:

*Mattos v. Mattos*, 162 Cal.App.2d 41, 328 P.2d 269 (1958) (entire tree posed threat);

---

**5.** Indeed, in *Hensley* we noted with approval the following words of Professor Prosser's "urban area exception":

But when the tree is in an urban area, and falls into a city street, there is no dispute as to the landowner's duty of reasonable care, including inspection to make sure that the tree is safe. The cases of trees therefore suggest that the ordinary rules as to negligence should apply in the case of natural conditions, and that it becomes a question of the nature of the locality, the seriousness of the danger, and the ease with which it may be prevented.

*Hensley*, 25 Md.App. at 366, 334 A.2d 542 (emphasis deleted).

For comprehensive discussions on the liability resulting from trees or limbs falling on public highways, *see Annot.*, 94 A.L.R.3d 1160 (1979); 11 A.L.R.2d 626 (1950); 72 A.L.R. 615 (1931).

**6.** There are no "bright line rules" for determining the liability of adjoining owners for damages arising from trees and foliage. For a compendium of 20th century cases discussing the variety of remedies available, see the appendix to this opinion.

*Dudley v. Meadowbrook, Inc.,* 166 A.2d 743 (D.C.1961) (same);

*Whitesell v. Houlton,* 2 Hawaii App. 365, 632 P.2d 1077 (1981) (overhanging branches posed threat);

*Farbe v. Klein,* 187 So.2d 467 (La.Ct.App.1966) (entire tree defective);

*Rowe v. McGee,* 5 N.C.App. 60, 168 S.E.2d 77 (1969) (same);

*Ivancic v. Olmstead,* 112 A.D.2d 508, 490 N.Y.S.2d 914 (1985) (limb from tree posed threat).

II.   These cases recognize a cause of action for damages for injuries caused by encroaching vegetation:

*Fick v. Nilson,* 98 Cal.App.2d 683, 220 P.2d 752 (1950) (limb and roots);

*Shevlin v. Johnston,* 56 Cal.App. 563, 205 P. 1087 (1922) (trees);

*Whitesell v. Houlton, supra* (overhanging branches);

*Farbe v. Klein, supra* (defective tree);

*Abbinett v. Fox,* 103 N.M. 80, 703 P.2d 177 (1985) (roots);

*Ivancic v. Olmstead, supra* (tree limbs);

*Mead v. Vincent,* 199 Okl. 508, 187 P.2d 994 (1947) (roots and branches);

*Gostina v. Ryland,* 116 Wash. 228, 199 P. 298 (1921) (pine needles).

III.   These cases held there to be no cause of action regarding encroaching vegetation, but espoused the self-help remedy:

*Drummond v. Franck,* 252 Ala. 474, 41 So.2d 268 (1949) (limbs);

*Bonde v. Bishop,* 112 Cal.App.2d 1, 245 P.2d 617 (1952) (limbs);

*Anderson v. Weiland,* 12 Cal.App.2d 730, 55 P.2d 1242 (1936) (self-help is limited so that entire tree is not destroyed);

*Stevens v. Moon,* 54 Cal.App. 737, 202 P. 961 (1921) (roots);

*McCrann v. Town Plan and Zoning Comm'n,* 161 Conn. 65, 282 A.2d 900 (1971) (roots and branches);

*Cooke v. McShane,* 108 Conn. 97, 142 A. 460 (1928) (hedge row);

*Sterling v. Weinstein,* 75 A.2d 144 (D.C.1950) (leaves and buds);

*Olson v. Westerberg,* 2 Ill.App.2d 285, 119 N.E.2d 413 (1954) (branches; may recover cost of removal);

*Harndon v. Stultz,* 124 Iowa 440, 100 N.W. 329 (1904) (branches and roots);

*Pierce v. Casady,* 11 Kan.App.2d 23, 711 P.2d 766 (1985) (branches; may not trespass to effect self-help);

*Schwalbach v. Forest Lawn Memorial Park,* 687 S.W.2d 551 (Ky.Ct.App.1985) (leaves, twigs and seeds);

*Ponte v. DaSilva,* 388 Mass. 1008, 446 N.E.2d 77 (1983) (sap, leaves);

*Jurgens v. Wiese,* 38 N.W.2d 261 (Neb.1949) (boughs of hedge);

*Wegener v. Sugarman,* 104 N.J.L. 26, 138 A. 699 (1927) (may not destroy entire tree, however);

*Turner v. Coppola,* 102 Misc.2d 1043, 424 N.Y.S.2d 864 (1980) (tree branches);

*Adams v. Hahne,* 59 Misc.2d 827, 300 N.Y.S.2d 420 (1969) (may not destroy entire tree);

*Murray v. Heabron,* 74 N.E.2d 648 (Ohio C.P.1947) (branches);

*Rosa v. Oliveira,* 115 R.I. 277, 342 A.2d 601 (1975) (overhanging limbs);

*Granberry v. Jones,* 188 Tenn. 51, 216 S.W.2d 721 (1949) (branches and foliage);

*Ogle v. Trotter,* 495 S.W.2d 558 (Tenn.Ct.App.1973) (same);

*Cobb v. Western Union Tel. Co.,* 90 Vt. 342, 98 A. 758 (1916) (may not trespass to effect self-help).

IV. These cases recognize no remedy from encroaching vegetation other than self-help, *unless* injury is substantial:

*Cannon v. Dunn,* 145 Ariz. 115, 700 P.2d 502 (1985);

*Whitesell v. Houlton, supra;*

*Rautsaw v. Clark,* 22 Ohio App.3d 20, 488 N.E.2d 243 (1985);

*Granberry v. Jones, supra;*

*Gostina v. Ryland, supra.*

V. These cases address whether liability is affected by classifying vegetation as natural or non-natural:

*Griefield v. Gibralter Fire & Marine Ins. Co.,* 199 Miss. 175, 24 So.2d 356 (1946) (no liability for injuries caused by natural vegetation);

*Hasapopoulos v. Murphy,* 689 S.W.2d 118 (Mo.Ct.App. 1985) (no liability for "letting nature take its course");

*Spadaro v. Putter,* 108 N.Y.S.2d 343 (N.Y.App.Div. 1950) (natural growth is in nature of an easement);

*Fabbri v. Regis Forcier, Inc.,* 114 R.I. 207, 330 A.2d 807 (1975) (natural/non-natural distinction is irrelevant in determining liability).

VI. These cases recognize equitable remedies to abate nuisance or otherwise enjoin encroachment of vegetation:

*Fick v. Nilson, supra;*

*Shevlin v. Johnston, supra;*

*Luke v. Scott,* 98 Ind.App. 15, 187 N.E. 63 (1933) (branches);

*Pierce v. Casady, supra;*

*Scott v. Ramos,* 399 So.2d 1266 (La.Ct.App.1981);

*Fontenot v. Central Louisiana Electric Co.,* 147 So.2d 773 (La.Ct.App.1962) (sole remedy is injunctive relief; self-help not permitted);

*Gibbs v. Tourres,* 50 So.2d 652 (La.Ct.App.1951) (falling limbs);

*Abbinett v. Fox, supra* (if imminent danger of substantial injury);

*Adams v. Hahne, supra* (technical encroachment by hedge did not constitute a nuisance);

*Loggia v. Grobe,* 128 Misc.2d 973, 491 N.Y.S.2d 973 (1985) (roots must interfere with use and enjoyment of property to be actionable nuisance);

*Mead v. Vincent, supra;*

*Fabbri v. Regis Forcier, Inc., supra* (unsound tree posed imminent danger).