NOTICE

Decision filed 03/21/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210373-U

NO. 5-21-0373

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| PATRICK FERRARI and BARBARA FERRARI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Madison County. |
| | ) | |
| v. | ) | No. 19-SC-2306 |
| | ) | |
| THE VILLAGE OF GLEN CARBON and GLEN CARBON PUBLIC WORKS, | ) | |
| | ) | Honorable |
| | ) | Thomas W. Chapman, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Welch concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the appellants have failed to provide this court with a record that is adequate to allow us to review their claims, we presume that the trial court correctly applied the law and that the missing portions of the record would have supported the court's rulings. Where the appellants' claim of judicial bias is based upon statements the court allegedly made that do not appear in the limited record provided to us and upon allegedly erroneous adverse rulings, the appellants cannot overcome the presumption that the trial judge was fair and impartial.

¶ 2    The plaintiffs, Patrick and Barbara Ferrari, filed a *pro se* small claims complaint against the defendants, the Village of Glen Carbon and the Glen Carbon Public Works Department, alleging that the defendants entered onto the plaintiffs' property and killed six of their gooseberry bushes. The court entered judgment in favor of the defendants. The plaintiffs appeal, arguing that (1) the court deprived them of their right to cross-examine a key witness for the defendants and

1

(2) the trial judge exhibited a bias against them and in favor of the defendants. They assert that the court manifested its bias by (1) interrupting the proceedings to give legal advice to the defendants' attorney, (2) engaging in an *ex parte* communication with the defendants' attorney, and (3) "acting as counsel for the defendants" by relying upon a statute the defendants did not cite and by making adverse rulings the plaintiffs contend were erroneous. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On July 19, 2019, the plaintiffs filed a *pro se* small claims complaint against the Village of Glen Carbon, Glen Carbon Public Works, and the Glen Carbon Police Department. The instant case is one of five small claims actions filed by the plaintiffs against the Village of Glen Carbon and related entities during July 2019. Although the actions involved separate incidents and separate claims, many of the proceedings on the cases were held together.

¶ 5      In their complaint in this case, the plaintiffs alleged that a "public works mower" entered their property and "mowed down and killed" their gooseberry bushes. They requested $600 in damages. Although the record before us is quite sparse, it appears that the bushes were mowed or trimmed in an effort to prevent them from encroaching onto the road and interfering with traffic. In their appellate brief, the plaintiffs allege that the bushes were planted seven feet from the road and that none of the branches came closer to the road than five feet.

¶ 6      On September 3, 2019, the defendants filed a motion to dismiss the plaintiffs' complaint pursuant to both sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2016)). They argued that (1) the plaintiffs' claim was barred by the one-year statute of limitations applicable to actions against local governments and governmental employees (see 745 ILCS 10/8-101 (West 2016)), (2) the plaintiffs failed to state a claim against the Glen Carbon Police Department because their complaint contained no allegations concerning acts or omissions

2

by the police department or its employees, and (3) all defendants had immunity under the Local Governmental and Governmental Employees Tort Immunity Act (Local Immunity Act) (*id.* §§ 1-101 *et seq.*). The defendants asserted that the individual employees whose conduct was at issue had immunity under section 2-201, which provides that local governmental employees are not liable for conduct involving the exercise of discretion in setting policy. See *id.* § 2-201; *Nichols v. City of Chicago Heights*, 2015 IL App (1st) 122994, ¶ 27. They further argued that the municipal entities named as defendants were immune from liability for the conduct of their employees. See 745 ILCS 10/2-109 (West 2016); *Nichols*, 2015 IL App (1st) 122994, ¶ 28. We note that the court did not enter an order ruling on the defendants' motion but did address some of these arguments in its final judgment.

¶ 7      On February 3, 2020, the court entered an order setting this case and three of the other pending small claims cases between the same parties for a nonjury trial in May 2020. On February 5, 2020, the plaintiffs filed a motion requesting a separate trial before a jury in this case. On February 18, the defendants filed a response to that motion, arguing that the plaintiffs waived their right to a jury by not including a jury demand in their original complaint. On February 19, the plaintiffs filed a motion applicable to all five of their pending cases. In it, they requested separate trial dates, arguing that preparing for all five cases would be burdensome.

¶ 8      On March 12, 2020, the court held a hearing on the pending motions in all five cases. At the hearing, the plaintiffs voluntarily withdrew all their claims against the police department. The court granted the plaintiffs' request for a jury trial in one of the cases over the defendants' objection. However, this case and three others remained set for a combined nonjury trial.

¶ 9      After numerous delays, the matters came for a trial on July 30, 2021. The plaintiffs have not provided this court with a full transcript from that hearing. Instead, they have provided us with

3

a short excerpt, which begins near the end of the plaintiffs' cross-examination of Village Streets Superintendent Daniel Lawrence, a witness for the defendants. In the excerpt, Patrick Ferrari asked Lawrence two questions related to one of the other cases tried that day, which involved allegations that the defendants entered the plaintiffs' property without their permission to mow their yard. After Lawrence answered the last question, Ferrari stated, "Okay. Thank you. I can't think of anything else, Your Honor."

¶ 10    Counsel for the defendants, Catherine Schwarze, then began her relatively brief redirect examination of Lawrence. Many of her questions related to two other cases—the case involving the mowing of the plaintiffs' yard and another case involving allegations that the defendants operated and stored equipment on the plaintiffs' yard that had been used in repairing a culvert. With regard to this case, Schwarze asked Lawrence, "And then regarding those photographs that Mr. Ferrari showed you, and the photographs that I showed you, was there any sort of metric indicating measurement on any of those photos?" Lawrence replied, "No, ma'am." In response to further questions, Lawrence opined that it was impossible to determine precise distances based on the photographs. He further testified that the photographs in the record did not have dates on them and that no aerial photographs were taken.

¶ 11    Next, the court questioned Lawrence about the case involving the culvert repair. After the court finished questioning him, the following exchange took place:

"THE COURT: Alright. Thank you very much for your time. We've spent all day. Thank you.

MR. FERRARI: I have cross-examination.

THE COURT: We are out of time today. I do have a couple of observations.

MR. FERRARI: I do have—

4

THE COURT: I'm sorry. You can't say that you haven't had a fair and decent hearing in terms of time.

MR. FERRARI: She brought up questions—

THE COURT: The Court has to exercise its discretion with respect to the management of the court['s] time. And I have a couple of questions for you in order to sort it out. So it's been—instead of [closing argument], I would appreciate if you would give me the opportunity to ask you two a couple of questions of it. Is that fair?

MR. FERRARI: Yes, sir.

MS. SCHWARZE: Yes, Your Honor."

The excerpt from the transcript ends with this exchange.

¶ 12    On October 28, 2021, the court entered a detailed written order in which it discussed at length the applicable law. The court first noted that public roads must be kept free from encroaching vegetation and branches, although "courts do not countenance what is termed 'overburdening' a servient tenement." The court then explained that in determining a municipality's exposure to liability, courts must consider the municipal government's duties to maintain public property and the privileges that come with those duties in order to effectuate them. The court went on to explain that if the issue involved is "seen as an issue of easements, the law is more strict as to exceeding the boundaries of the easement, but if seen as an issue of trespass, the law is more sensitive to the government's practical need to enter onto the property of a citizen to effect maintenance of public property."

¶ 13    The court next reviewed several out-of-state cases addressing the rights of property owners in cases involving the encroachment of roots or limbs from trees onto abutting public or private property. With respect to disputes between private property owners, the court noted that both

property owners "have the right of ordinary trimming and clipping, which does not extend to injury or destruction of the main stalks of the hedge." The court further noted that "if the stem is on the boundary line, as defendants' witness suggests, a right arises in favor of the owner not to have the bushes destroyed." The court emphasized, however, "that the community and the citizen are not in the same position," explaining that "the duty imposed on the city to maintain roadways yield a privilege to the government."

¶ 14    The court next considered the applicability of the Local Immunity Act (745 ILCS 10/1-101 *et seq.* (West 2016)). The court found that the provisions of that act cited by the defendants were inapplicable. As discussed previously, those provisions give immunity to local officials exercising discretion in determining policy (*id.* § 2-201) and extend that immunity to the entity employing them (*id.* § 2-109). The court explained, however, that the conduct alleged in the plaintiffs' complaint—trimming bushes—"is not classed [as] discretionary activity." Although the court noted that section 2-209 "might very [well] apply to foreclose liability" had it been cited, the court found that the defendants could not rely on that immunity provision because they did not cite it. The court explained that the Local Immunity Act is an affirmative defense that must be raised and proven by the local governmental entity seeking immunity. See *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 370 (2003).

¶ 15    Next, the court considered the applicability of the common law privilege or implied consent "to local government or its agents to enter onto [the] property of a citizen to repair *** public property," including making road repairs or trimming vegetation along public roadways. Citing section 211 of the Restatement (Second) of Torts, the court noted that a legislatively imposed duty or authority "carries with it the privilege to enter land in the possession of another" if reasonably necessary to perform that duty. See Restatement (Second) of Torts § 211 (1965). The court

6

concluded that the common law doctrines of privilege and implied consent allowed the defendants "to mow along a public roadway without earning a suit for trespass if there is some incidental encroachment." The court therefore entered judgment in favor of the defendants. This appeal followed.

¶ 16                                      II. ANALYSIS

¶ 17     On appeal, the plaintiffs argue that the court erred by not permitting recross-examination of Lawrence. In addition, they argue that the court exhibited a bias in favor of the defendants and engaged in *ex parte* communications with the defendants' attorney. We reject these contentions.

¶ 18                                  A. Cross-Examination

¶ 19     The plaintiffs first contend that the court erred by refusing to allow "a critical cross-examination" of Lawrence after his redirect testimony. They argue that the court's decision violated the sixth amendment to the United States Constitution (U.S. Const., amend. VI) and section 2-1102 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1102 (West 2018)). They further argue that the court's ruling deprived them of the opportunity to refute two aspects of Lawrence's testimony. In particular, they assert that Lawrence falsely testified that the Village of Glen Carbon had an easement "next to" their property and that the defendants' attorney led Lawrence "in a fabrication of [their] bushes 'encroaching' the road." The plaintiffs also assert that they were denied the opportunity to counter this same testimony through documentary evidence they attached to several posttrial motions they filed. Those motions were denied by the trial court.

¶ 20     In response, the defendant argues that the plaintiffs forfeited these claims by failing to object at trial. See *Sinclair v. Berlin*, 325 Ill. App. 3d 458, 467 (2001). We agree with the defendants that the plaintiffs forfeited any argument with respect to the documentary evidence. They acknowledge that they only attempted to present the evidence after trial along with various

posttrial motions they filed. However, we do not agree with the defendants that the plaintiffs forfeited their arguments concerning cross-examination. As previously discussed, the plaintiffs requested an opportunity to conduct further cross-examination of Lawrence after the defendants' redirect examination, and they specifically stated that the defendants' attorney raised questions during redirect examination. Although they did not use the word "objection," we find that the plaintiffs drew the issue to the court's attention. As such, we find that they adequately preserved the issue for appellate review. We therefore turn our attention to the merits of the plaintiffs' contentions.

¶ 21    The scope and extent of cross-examination are within the sound discretion of the trial court. *Adams v. Sarah Bush Lincoln Health Center*, 369 Ill. App. 3d 988, 998 (2007). On appeal, we will not reverse absent a clear abuse of the court's discretion that resulted in manifest prejudice to the appellant. *Id.* An abuse of discretion occurs only when the trial court acts arbitrarily, fails to use conscientious judgment, exceeds the bounds of reason, and ignores recognized principles of law or when no reasonable person could take the position adopted by the trial court. *Id.* at 1000.

¶ 22    The plaintiffs assert that the defendants' direct examination of Lawrence went on for an hour and a half. They further assert that Lawrence testified at some point that the defendants had an easement "next to" the plaintiffs' property and that the defendants' attorney led him to testify that their bushes encroached on the road. They contend that they could have proven this testimony was false and that the gooseberry bushes did not encroach on the roadway or impede traffic had they been given the opportunity to cross-examine Lawrence further. We are not persuaded.

¶ 23    The portion of the trial transcript provided to us by the plaintiffs does not include any portion of the direct examination of Lawrence, nor does it include their entire cross-examination of Lawrence. It was the duty of the plaintiffs, as the appellants, to provide us with a record that is

8

adequate to allow us to resolve their claims. *Midwest Builder Distributing, Inc. v. Lord & Essex, Inc.*, 383 Ill. App. 3d 645, 655 (2007). To the extent there are gaps in the record that could materially affect our decision, we must resolve any doubt created by those gaps against the appellants. *Id.*

¶ 24    The limited excerpt of the trial transcript the plaintiffs provided does not support their claim. The excerpt reveals that Patrick Ferrari was permitted to cross-examine Lawrence until he could not think of any more questions to ask. As we discussed earlier, the only questions the defendants' attorney asked Lawrence during redirect examination pertaining to this case related to photographs that had been admitted into evidence earlier in the trial. Because the record does not indicate otherwise, we must presume the court allowed the plaintiffs the opportunity to question Lawrence or other witnesses about the contents of the photographs. See *id.* (stating that we must presume any missing portions of the record support the court's ruling).

¶ 25    Significantly, although the plaintiffs now contend that the court's decision not to allow recross-examination deprived them of an opportunity to challenge testimony that their bushes encroached on the public roadway and testimony concerning an easement, that testimony was not elicited during redirect examination. As such, if Lawrence provided the testimony in question, he could only have done so during direct examination by the defendants or cross-examination by the plaintiffs, thus giving the plaintiffs the opportunity to question him on those topics. Moreover, to the extent the limited record prevents us from determining with certainty that the plaintiffs had this opportunity, we must resolve the doubt created by the gaps in the record against the plaintiffs. See *id.* We can find no abuse of the trial court's discretion based on the record provided.

¶ 26                    B. Judicial Bias and *Ex Parte* Communication

¶ 27    The plaintiffs next contend that the court demonstrated that it was biased against them and in favor of the defendants and engaged in an improper *ex parte* conversation with the defendants' attorney. They correctly note that trial judges are prohibited from engaging in *ex parte* communications and are required to perform their duties "without bias or prejudice." Ill. S. Ct. R. 63(A)(5), (A)(9) (eff. Dec. 16, 2020). The plaintiffs assert that the court engaged in an *ex parte* communication with the defendants' attorney by telling her after trial that she would be given time to submit written arguments. They allege that this took place in their presence. The plaintiffs argue that in addition to violating Illinois Supreme Court Rule 63(A)(5), this demonstrated the court's bias in favor of the defendants. The plaintiffs argue that the court further demonstrated its bias by interrupting the proceedings to give legal advice to the defendants' attorney. In addition, they argue that the court was "acting as counsel for the defendants" because it relied on section 2-209 of the Local Immunity Act (745 ILCS 10/2-209 (West 2016)) even though the defendants did not cite this statute, misinterpreted two of the out-of-state cases cited in the decision, and made various adverse rulings the plaintiffs contend were erroneous. We reject these claims.

¶ 28    Trial judges are presumed to be fair and impartial. A party alleging judicial bias has the burden of overcoming this presumption. *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). This requires "evidence of prejudicial trial conduct and evidence of the judge's personal bias." *Id.* Adverse rulings and other alleged errors alone are insufficient to demonstrate judicial bias. *Id.* As we discussed previously, appellants must also provide this court with a record adequate to allow us to evaluate their claims. *Midwest Builder Distributing, Inc.*, 383 Ill. App. 3d at 655.

¶ 29    In support of their claims of judicial bias, the plaintiffs first assert that the court "paused the trial midway briefly to openly and freely give the Defense Attorney, Catherine Schwarze, legal

advice and to council [*sic*] her in a new, or alternative, legal strategy." They further allege that the trial judge had an *ex parte* communication with Schwarze when he informed her after trial that she would be permitted time to submit written arguments. The record we have been provided does not support these allegations.

¶ 30    The plaintiffs next contend that the court demonstrated its bias against them by ignoring evidence that no easement existed. Again, the limited record they have provided does not contain evidence related to the question of whether an easement existed. Moreover, the court's ruling—which we set out in detail earlier in this order—does not rely on the existence of an express easement.

¶ 31    The plaintiffs further argue that the trial judge demonstrated bias because he "acted as the defense attorney himself." They assert that he did this by relying on section 2-209 of the Local Immunity Act after repeatedly noting that the defendants failed to cite this provision. We note, parenthetically, that section 2-209 provides immunity from tort liability to local governmental employees for injuries arising from their "entry upon any property where such entry is expressly or impliedly authorized by law." 745 ILCS 10/2-209 (West 2016). As we mentioned earlier, however, the court explicitly found that although this provision likely could apply to the facts of this case, the defendants could not rely on it because they did not cite it. Thus, the record does not support the plaintiffs' assertion. The plaintiffs raise additional arguments concerning the Local Immunity Act. Because the court did not find the Local Immunity Act to be applicable, we need not address these arguments.

¶ 32    Finally, the plaintiffs argue that the court demonstrated its bias against them by ignoring pertinent language in one of the out-of-state cases it cited in its order and relying on another out-of-state case that the plaintiffs contend was inapposite. More specifically, they assert that the court

11

overlooked language in *Adams v. Hahne*, 300 N.Y.S.2d 420 (N.Y. 1969), stating that even where trimming of bushes is allowed, ordinary trimming should not extend to injury or destruction of the main stalks. See *id.* at 423. They further assert that the case of *Spadaro v. Putter*, 108 N.Y.S.2d 343 (N.Y. 1950), is inapplicable to this case because the plaintiffs in that case conceded their hedges encroached across the boundary line. See *id.* at 344. We are not persuaded.

¶ 33    We first note that both cases involved disputes between owners of adjoining private property over hedges growing on or near the property line. *Adams*, 300 N.Y.S.2d at 421; *Spadaro*, 108 N.Y.S.2d at 344. Although the court cited to these and other cases while discussing the general law applicable to similar disputes, the court did not rely upon these cases or find them controlling. Instead, the court explicitly stated that local governments stand in a different position from private property owners due to a privilege or implied license to enter private property if reasonably necessary to do so to repair or maintain public property. Thus, the record does not support the plaintiffs' contentions.

¶ 34    More importantly, as we have already explained, to support a claim of judicial bias, a party must do more than assert that the court made erroneous unfavorable rulings. See *Eychaner*, 202 Ill. 2d at 280. Because the plaintiffs have not done that in this case, they are unable to overcome the presumption that the trial judge was fair and impartial. See *id.* For these reasons, we reject their claims of judicial bias and an improper *ex parte* communication.

¶ 35                                    III. CONCLUSION

¶ 36    For these reasons, we affirm the trial court's judgment.


¶ 37    Affirmed.